Peter Strojnik, Arizona Bar No. 6464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: Strojnik@aol.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| MILIVOJE DJORDJEVICH AND MILOMIRKA DJORDJEVICH, husband and wife<br><br>Plaintiff,<br><br>vs.<br><br>DEXIA REAL ESTATE CAPITAL MARKETS, a Delaware Corporation, ARTESIA MORTGAGE CAPITAL CORPORATION, a foreign entity; UNKNOWN PARTIES 1-10,<br><br>Defendants. | NO.<br><br>**VERIFIED COMPLAINT**<br><br>Fraud in the Inducement<br>Breach of Contract and Bad Faith<br>Specific Performance<br>Scheme or Artifice to Defraud<br>Negligence |

## THE PARTIES, JURISDICTION AND VENUE

1.  Plaintiffs Milivoje Djordjevich and Milomirka Djordjevich ("Djordjevich") are husband and wife residing in Mesa, Arizona.

2.  Dexia Real Estate Capital Markets ("Dexia") holds itself out as a Delaware Corporation. Artesia Mortgage Capital Corporation ("Artesia") is a foreign entity holding itself out as a "Dexia Company". On information and belief, Artesia has been renamed to Dexia.

3.  The amount of controversy exceeds $75,000.00.

4.  The United States District Court of the State of Arizona has jurisdiction over this matter by virtue of 28 U.S.C. §1332 (diversity of citizenship).

5.  Venue is proper pursuant to 28 U.S.C. §1391 for the reason that the events which form the subject matter of this Complaint occurred within this District.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

6.  On November 2, 2006, Djordjevich submitted to Artesia a Loan Application for a mortgage loan secured by property commonly known as Coconut Grove Apartments located in Phoenix, Arizona. A copy of the Application is appended hereto as Exhibit 1.

7.  In connection with the Loan Application, Djordjevich paid to Dexia/Artesia the sum of $16,000.00. *See* Exhibit 2.

8.  On December 20, 2006, Djordjevich and Dexia/Artesia entered into an Advanced Interest Rate Lock Agreement for a loan in the amount of $7,700,000.00. Exhibit 3. The Advanced Interest Rate Lock Agreement provided that, *inter alia*, upon "an advanced rate lock deposit of $154,000…the Borrower may lock the interest rate … on the Loan up to November 1, 2007…" upon which "Artesia will issue a letter … to the Borrower confirming the Locked Interest Rate and date through which it is locked".

9.  On December 20, 2006, Djordjevich paid to Dexia/Artesia the sum of $154,000 for the advanced rate lock deposit. Exhibits 2 and 4.

10. On February 20, 2007, Dexia/Artesia issued Interest Rate Lock Confirmation confirming the interest rate at 5.890% per annum. Exhibit 4.

11. Thereafter, Djordjevich intended to extend the Rate Lock Expiration Date. Dexia/Artesia demanded an additional sum of $154,000.00 for the extension. Djordjevich paid the additional sum of $154,000.00 on September 14, 2007 (Exhibit 2)

12. On October 31, 2007, Dexia/Artesia issued a Commitment Letter to Djordjevich through Dexia/Artesia's agent, Keaton Merrell of Johnson Capital Partners ("Johnson Capital"). Exhibit 5.

13. The October 31, 2007 commitment letter, contrary to agreement, reduced the loan amount from $7,700,000 to $6,400,000, and increased the interest rate by 8 basis points, and otherwise materially changed the terms of the agreement for which Djordjevich paid two installments of $154,000.00 each.

14. The Commitment Letter dated October 31, 2007, Exhibit 5, requested acknowledgement of the terms of the Commitment Letter by no later than November 2, 2007.

15. Djordjevich did not sign the Commitment Letter.

16. On December 3, 2007, Dexia/Artesia issued a Restated Commitment Letter, Exhibit 6, through Dexia/Artesia's agent Johnson Capital.

17. The Restated Commitment Letter, Exhibit 6, contrary to agreement, further reduced the loan amount from $7,700,000.00 to $6,200,000.00 and increased the interest rate by 40 basis points and otherwise materially changed the terms of the agreement for which Djordjevich paid two installments of $154,000.00

18. Dexia/Artesia demanded that Djordjevich acknowledge his agreement to the terms of the Restated Commitment Letter by no later than December 5, 2007.

19. Djordjevich did not sign the Restated Commitment Letter, Exhibit 5.

20. On January 11, 2008, Djordjevich requested a status of the matter from Dexia/Artesia. Exhibit 7.

21. In response to Djordjevich's inquiry, Dexia/Artesia advised Djordjevich on January 17, 2008 that, "Such Revised Commitment Letter [Exhibit 5] required, among other things, that [Djordjevich] countersign it by December 5, 2007. The Commitment Letter was not countersigned by [Djordjevich] and expired by its terms. As a result, Dexia has elected not to consider making the Proposed Loan any further". *See* Exhibit 8.

22. Dexia/Artesia further advised Djordjevich that they will retain $258,396.18 for "costs".

## COUNT ONE
### (Fraud in the Inducement)

23. Plaintiff realleges all allegations heretofore set forth.

24. The parties agreed to extend the Advanced Interest Rate Lock Agreement, Exhibit 3, and the Interest Rate Lock Confirmation, Exhibit 4, for a period of one year. The acceptance of the extension was communicated by Plaintiff to Defendant through payment of the extension fee of $154,000.00 on September 14, 2007.

25. Defendants accepted the payment of $154,000.00 and thereby accepted the extension of the Advanced Interest Rate Lock Agreement, Exhibit 3, and the Interest Rate Lock Confirmation, Exhibit 4, for a period of one year; the agreement thus reached is referred to as the Extension Agreement.

26. At the time of the acceptance of the $154,000.00 on September 14, 2007 by Defendants, Defendants had no intention of honoring the Extension Agreement by extending the terms

of the Advanced Interest Rate Lock Agreement, Exhibit 3, and the Interest Rate Lock Confirmation, Exhibit 4, for a period of one year.

27. Instead, Defendants intended, by treachery and scheme, to change the terms of the Advanced Interest Rate Lock Agreement and the Interest Rate Lock Confirmation by piecemeal reducing the amount of the loan and increasing the interest rate.

28. Defendants knew that the Plaintiff needed to refinance the Coconut Grover property, and that Plaintiff would be under economic and monetary stress to accept the changed deal even though the changed deal violated the Extension Agreement.

29. In accordance with their treachery and scheme, Defendants reduced the finance amount from $7,700,000 to $6,400,000 in its October 31, 2007 Commitment Letter, Exhibit 5, and then again from $6,400,000 to $6,200,000 in their December 3, 2007, Restated Commitment Letter, Exhibit 6.

30. In accordance with their treachery and scheme, Defendants increased the interest rate by 8 basis points in their October 31, 2007 Commitment Letter, Exhibit 5, and then again by 40 points in their December 3, 2007, Restated Commitment Letter, Exhibit 6.

31. Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of Plaintiff, entitling Plaintiff to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing financial frauds described herein, but in no event less than $5,000,000.00.

32. This matter arises out of contract, entitling Plaintiff to attorney's fees pursuant to ARS § 12-341.01.

33. WHEREFORE, Plaintiff prays for judgment as follows:

a. For the refund of $258,396.18 unjustly withheld by Defendants from the funds paid by Plaintiff; and/or

b. For damages for breach of the Extension Agreement alternatively

    i. In the difference of the interest rate on a loan ultimately secured by Plaintiff for the Coconut Grove Property; or

    ii. Insofar as Defendants knew the purpose of the loan, for any consequential damages caused by the breach; or

    iii. For specific performance; and

c. For pre and post judgment interest at the highest legal rate; and

d. For punitive damages in the amount no less than $5,000,000.00; and

e. For costs and attorney's fees incurred herein; and

f. For such other and further relief as the Court may deem just and proper.

**COUNT TWO**
(Breach of Contract and Bad Faith)

34. Defendants breached the Extension Agreement to extend the Advanced Interest Rate Lock Agreement, Exhibit 3, and the Interest Rate Lock Confirmation, Exhibit 4, as indicated above.

35. The Extension Agreement and, indeed, the entirety of the agreements between the parties was subject to the implied duties of good faith and fair dealing.

36. The implied covenant of good faith and fair dealing requires that neither party act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.

37. Defendants breached (1) the express terms of the Extension Agreement; and (2) Breached the implied duty of good faith and fair dealing.

38. This matter arises out of contract, entitling Plaintiff to an award of attorney's fees pursuant to ARS § 12-341.01.

39. WHEREFORE, Plaintiff prays for judgment as follows:

    a.  For the refund of $258,396.18 unjustly withheld by Defendants from the funds paid by Plaintiff; and/or

    b.  For damages for breach of the Extension Agreement alternatively

        i.  In the difference of the interest rate on a loan ultimately secured by Plaintiff for the Coconut Grove Property; or

        ii.  Insofar as Defendants knew the purpose of the loan, for any consequential damages caused by the breach; or

        iii.  For specific performance; and

    c.  For pre and post judgment interest at the highest legal rate; and

    d.  For costs and attorney's fees incurred herein; and

    e.  For such other and further relief as the Court may deem just and proper.

### COUNT THREE
(Specific Performance)

40. Plaintiff realleges all allegations heretofore set forth.

41. Plaintiff is entitled to the remedy of specific performance of the extension agreement as negotiated and agreed to.

42. WHEREFORE, Plaintiff prays for judgment as follows:

a.  For the specific performance of the Extension Agreement based on the Advanced Interest Rate Lock Agreement, Exhibit 3, and the Interest Rate Lock Confirmation, Exhibit 4; and

b.  For costs and attorney's fees incurred herein; and

c.  For such other and further relief as the Court may deem just and proper.

### COUNT FOUR
(Scheme and Artifice to Defraud)

43. Plaintiff realleges all allegations heretofore set forth.

44. The offense of attempted or completed "scheme or artifice to defraud" is a predicate offense to Arizona Racketeering statutes pursuant to ARS §12-2301(D)(4)(xx).

45. Under the rationale of *MacCollum v. Perkinson*, 185 Ariz. 179, 913 P.2d 1097, 211 Ariz. Adv. Rep. 44 (App.1996), predicate offenses provide a private cause of action.

46. Defendants, pursuant to the scheme or artifice to defraud described above, knowingly obtained and attempted to obtain benefits by means of false or fraudulent pretenses, representations, promises or material omissions.

47. Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of Plaintiff, entitling Plaintiff to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing financial frauds described herein, but in no event less than $5,000,000.00.

48. This matter arises out of contract, entitling Plaintiff to attorney's fees pursuant to ARS § 12-341.01.

49. WHEREFORE, Plaintiff prays for judgment as follows:

a.  For the refund of $258,396.18 unjustly withheld by Defendants from the funds paid by Plaintiff; and/or

b.  For damages for breach of the Extension Agreement alternatively

    i.  In the difference of the interest rate on a loan ultimately secured by Plaintiff for the Coconut Grove Property; or

    ii.  Insofar as Defendants knew the purpose of the loan, for any consequential damages caused by the breach; or

    iii.  For specific performance; and

c.  For pre and post judgment interest at the highest legal rate; and

d.  For punitive damages in the amount no less than $5,000,000.00; and

e.  For costs and attorney's fees incurred herein; and

f.  For such other and further relief as the Court may deem just and proper.

**COUNT FIVE**
(Negligence)

50. Plaintiff realleges all allegations heretofore set forth.

51. Defendants owed Plaintiff a duty of care, including a duty of making true representations, duty of not making negligent misrepresentations and negligent omissions.

52. Defendants breached their duty to Plaintiff, causing damage.

53. Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of Plaintiff, entitling Plaintiff to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing financial frauds described herein, but in no event less than $5,000,000.00.

54. This matter arises out of contract, entitling Plaintiff to attorney's fees pursuant to ARS § 12-341.01.

55. WHEREFORE, Plaintiff prays for judgment as follows:

      a.  For the refund of $258,396.18 unjustly withheld by Defendants from the funds paid by Plaintiff; and

      b.  For additional damages proximately caused by Defendants' breach of duty; and

      c.  For punitive damages in the amount no less than $5,000,000.00; and

      d.  For costs and attorney's fees incurred herein; and

      e.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on issues triable by a jury.

    RESPECTFULLY submitted this 1?th day of February, 2008.

Peter Strojnik
Attorney for Plaintiff

## VERIFICATION

Plaintiff Milivoje Djordjevich affirms under the penalty of perjury that the above allegations are true to the best of his knowledge, information, memory and belief.

DATED this 13th day of February, 2008.

Milivoje Djordjevich

-10-

54. This matter arises out of contract, entitling Plaintiff to attorney's fees pursuant to ARS § 12-341.01.

55. WHEREFORE, Plaintiff prays for judgment as follows:

    a.  For the refund of $258,396.18 unjustly withheld by Defendants from the funds paid by Plaintiff; and

    b.  ~~For additional damages proximately caused by Defendants' breach of duty; and~~

    c.  For punitive damages in the amount no less than $5,000,000.00; and

    d.  For costs and attorney's fees incurred herein; and

    e.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on issues triable by a jury.

    RESPECTFULLY submitted this 13th day of February, 2008.

_____
Peter Strojnik
Attorney for Plaintiff

## VERIFICATION

Plaintiff Milivoje Djordjevich affirms under the penalty of perjury that the above allegations are true to the best of his knowledge, information, memory and belief.

DATED this 13th day of February, 2008.

Milivoje Djordjevich

1

## PROOF OF ELECTRONIC FILING

2

3

4

This matter was electronically filed with the
United States District Court for the
District of Arizona this 1₅th day of
February, 2008.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Exhibit 1*



**ARTESIA**
A DEXIA COMPANY

October 27, 2006

Artesia Mortgage Capital Corporation
1180 NW Maple Street, Suite 202
Issaquah, Washington 98027

### LOAN APPLICATION

**Property Address:**      **Coconut Grove Apts**
                          2028 West Indian School Road
                          Phoenix, AZ 85015

**Borrowing Entity:**      To be Determined Level II SPE (Milivoje Djordjevich as Principal and Carve-out
**Guarantor)**

The undersigned Borrower, by this Loan Application ("Application"), together with the information provided to
you and to be provided to you concerning the Property referred to above and based upon the representations
made through the information provided and to be provided to you applies to Artesia Mortgage Capital
Corporation its successors and/or assigns (hereinafter referred to as "Artesia" or "Note holder" or "Lender"), for
a loan ("Loan") on terms outlined in this Application as follows.

**Loan Amount:**           $7,700,000

**Debt Service**          The final Loan Amount must be able to support a minimum debt service coverage
**Coverage Ratio:**        ratio of 1.20 as underwritten by Artesia.

**Loan-to-Value:**         The Loan Amount must not exceed 75% of an acceptable MAI appraised value of
                          the Property.

**Loan-to-Cost:**          The Loan Amount must not exceed 90% of the Borrower's cost basis (purchase
                          price plus closing costs plus renovation/upgrade expenditures). Lender
                          understands that the Borrower purchased the property in 2005 when it was 65%
                          occupied and within four months had the building 100% occupied. Therefore, the
                          Borrower will have owned the property for over two years when the loan is funded
                          and has created value through the turnaround of the property.

**Interest Rate Spread:**  129 basis points including the cost of a forward until November 1, 2007.

**Interest Rate:**         The yield to maturity of the 10 Year on-the-run US Treasury (the 'Index') plus the
                          Interest Rate Spread. Notwithstanding the foregoing, if the Swap Spread, defined
                          as the spread between the US Dollar Interest Rate Swap (equivalent to the afore
                          mentioned US Treasury) and the stated US Treasury, is greater than 56 basis
                          points at the time the Interest Rate is to be locked, then the difference between the
                          current Swap Spread and 56 basis points will be added to the previously stated
                          spread over the US Treasury in calculating the Interest Rate.

                          The Index as of October 27, 2006, was 4.67%.

**Floor Rate:**            In no event will the Interest Rate be less than 5.65% ("Floor Rate").

Page 1 of 6

| | |
|---|---|
| **Interest Rate Lock:** | If the Borrower wishes to lock the Interest Rate in advance of any commitment by the Lender (the "Commitment") (which shall be in the form of a commitment letter issued pursuant to this Application) to make the Loan, upon Borrower's request a separate agreement (the "Advance Interest Rate Lock Agreement") specifying the terms and conditions for such advance Interest Rate lock ("Advance Interest Rate Lock") will be sent to the Borrower, and the Advance Interest Rate Lock Agreement will become a binding contract between Artesia and the Borrower upon Artesia's receipt of the Rate Lock Deposit (as defined in the Advance Interest Rate Lock Agreement) in the form of a wire transfer (wired pursuant to the wiring instructions attached hereto as Exhibit A) or cashier's check made payable to Artesia, and will be subject to the terms and conditions of any Commitment. |
| | If the Borrower wishes to lock the Interest Rate after any Commitment, the Lender will allow the Borrower, subject to the terms and conditions of the Commitment and Borrower's written acceptance thereof and Artesia's receipt of the Commitment Fee (defined below) in the form of a wire transfer (wired pursuant to the wiring instructions attached hereto as Exhibit A) or cashier's check made payable to Artesia. Any Interest Rate locked ("Locked Interest Rate") as permitted above shall be locked from and including the Rate Lock Date (defined below). The "Rate Lock Date" is the date the Interest Rate is locked. Artesia will issue a letter ("Interest Rate Lock Confirmation") to the Borrower confirming the Locked Interest Rate and date through which the Interest Rate is locked ("Rate Lock Expiration Date"). The closing of the Loan must occur on or before the Rate Lock Expiration Date. |
| | Given that the loan is being quoted and priced for a November 1, 2007 closing, it will be necessary for the Borrower to lock the interest rate at the time the Loan Application is executed. |
| **Interest Method (Day Count):** | The interest will be calculated on the basis of a 360-day year, but will be payable on the basis of the actual number of days elapsed. |
| **Collateral:** | First lien Deed-of-Trust/Mortgage, Assignment of Leases and Rents, cash collateral accounts established, on-going escrow accounts funded, Letters of Credit posted and UCC-1 Financing Statements all secured by land, improvements and personal property defined as follows: |
| | A 236 Unit Multifamily property known as Coconut Grove Apts located at 2028 West Indian School Road in Phoenix, AZ. |
| **Loan Term:** | 10 years |
| **Amortization Term:** | 30 years  (with first 24 months on an Interest Only basis) |
| **Borrower Structure:** | The Borrower must be a single purpose entity, which owns no assets other than the Property, incurs no debts other than the Loan and Property level debts (such as accounts payable) and other Property operating expenses, and engages in no business other than the ownership and operation of the Property ("Borrowing Entity"). The single asset entity must adhere to limited purpose and separateness covenants contained in the Loan documents. These covenants will also be incorporated into the organizational documents of the borrowing entity. (Level II) |
| **Prepayment:** | Prepayment of the Loan will be prohibited prior to the date that is three (3) years from the commencement of the Loan term, or two years and one (1) day after the startup day of any real estate mortgage investment conduit (REMIC) which may acquire the Loan, whichever occurs first ('Lockout Period'). After the Lockout Period, the Borrower will be permitted to pay to Note Holder a defeasance deposit in an amount sufficient to defease the Loan as determined by Note Holder in lieu of a prepayment thereof. The defeasance deposit must be an amount sufficient to purchase direct, non-callable U.S. obligations that provide for payments at least equal to the amount of each monthly installment under the Note for the remainder of the Loan Term. If the Loan has not been defeased, the Borrower will have the |

right to pay the Loan, in whole, but not in part, on any of the last three (3) scheduled payment dates (including the Maturity Date) of the Loan term, without paying any prepayment charge.

**Assumption:**
Upon approval of Artesia and payment of a 1% assumption fee; however, the following shall not be deemed to be a transfer for which an assumption fee is required: (i) transfers of up to 49% in the aggregate of limited partner, non-managing member or shareholder interests (as applicable), so long as those persons responsible for the management and control of the Borrower and the Property remain unchanged or any replacement management is approved by Lender, and (ii) transfers of any individual's direct or indirect interests in the Borrower to a spouse or lineal descendant of such individual or to a trust for the benefit of any one or more of such individual, lineal descendant or spouse, so long as those persons responsible for the management and control of the Borrower and the Property remain unchanged or any replacement management is approved by Lender.

**Secondary Debt:**
The Borrower is prohibited from having any other debt, secured or unsecured, other than this Loan and miscellaneous trade payables (not to exceed 4% of the loan amount). This restriction of no additional debt includes any contingent liability such as a Letter of Credit issued on behalf of the Borrower. If a Letter of Credit is required as part of the transaction, it must be an obligation of an individual or entity other than the Borrower. Notwithstanding the above, the Borrower may incur mezzanine debt in the future so long as the combined LTV does not exceed 85% and the combined DSCR is not less than 1.10. This additional debt cannot be secured by the real estate but instead must be secured by the ownership interest only.

**Carve-out Guarantors:**
Borrowing Entity and Mr. Milivoje Djordjevich

**Recourse:**
Non-recourse except for (i) fraud and material misrepresentations; (ii) environmental issues; (iii) misapplication of funds/proceeds; (iv) voluntary bankruptcy; and (v) certain other customary carve-outs which will be recourse to Borrower and Carve-out Guarantors.

**Credit Investigation:**
The Borrower hereby authorizes Artesia and any representative of Artesia to make inquiries regarding the Borrowing Entity and its Principals with respect to the character, general reputation, personal characteristics, financial or credit data. Upon Artesia's request, the Borrower will provide additional information as to such matters as Artesia may require. Further, the Borrower acknowledges that Artesia or representatives of Artesia will be reviewing, processing and examining financial and other information set forth in this Application and any submissions made in connection herewith. Pursuant to that review, Artesia or such representatives may discuss such information with attorneys and/or accountants if necessary. The Borrower and any of the Borrowing Entity's Principals hereby consent to the examination and sharing of this information with attorneys and/or accountants if necessary.

**Loan Broker Fees:**
Specified in a separate agreement between the Loan Broker and the Borrower.

**Title Policy:**
An ALTA Extended Coverage Title Policy (1992 version deleting creditor's right exclusions and arbitration provision) must be issued at closing (title premium to be paid by the Borrower) with endorsements required by Artesia insuring Artesia's first lien position showing the Borrower in fee simple title with no encumbrances or exceptions other than those approved by Artesia. The Borrower must pay any cost of and provide Artesia with a Title Commitment including Exhibits and pro-forma endorsements, with proposed title vesting from an office of or agent of (in which case an acceptable insured closing letter must also be provided to Artesia) for a Title Policy to be issued by one of the following: Chicago Title Insurance Company, First American Title Insurance Company, Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, Transnation Title

Insurance Company, Stewart Title Guaranty Company, Old Republic National Title Insurance Company or Attorney's Title Insurance Fund (the "Fund"), except that the Fund shall be acceptable only if the Property is in Florida.

**Survey:** The Borrower must pay for and provide Artesia with an ALTA/ACSM Land Title Survey in accordance with the requirements specified in the attached Questionnaire. Borrower must provide Artesia with the name, address and phone number of the Surveyor Borrower will engage, as part of this Loan Application (see Questionnaire).

**Non-Refundable Application Fee:** A non-refundable Application Fee of $5,000 must be provided along with the execution of this Application in order for this Loan Application to be considered and the processing of the Loan to begin.

**Third Party Cost / Legal Fee Deposit:** The Borrower must provide a $15,000 Third Party Cost Deposit ("Deposit") that will be used for the cost of the appraisal, environmental, physical condition and credit reports as well as Artesia legal fees, ground lease review (if applicable), flood certificate, insurance review, Dun and Bradstreet reports (if applicable), and a Probable Maximum Loss study (if applicable). This deposit will be applied toward such third party costs (including legal fees), and Borrower agrees to pay the total costs less the Deposit, at closing. All other closing costs such as title insurance, brokerage fees, survey, life-of-loan tax service, fees and expenses of Borrower's legal counsel (including Borrower Legal Opinion), UCC and legal Searches, etc. must be paid by the Borrower separately at or before closing. The Borrower may be required to pay an additional deposit to cover such costs prior to closing the Loan. The Borrower hereby agrees that this is a deposit to be credited against total costs and expenses charged to Borrower, and that all costs associated with the processing and funding of the Loan will be paid by the Borrower on or before funding. Any unused funds from the Deposit will be returned to the Borrower at closing.

Borrower acknowledges that both Borrower and Lender are sensitive to legal fees and costs, and that the Deposit includes a portion for Artesia's base legal fees. The base legal fees are intended to reasonably contemplate the size and complexity of a loan closing based on property type, loan size, number of tenants, etc. The base legal fees anticipate reasonable loan document negotiations and no unusual circumstances, and assume (i) Borrower's counsel is experienced with securitized loan documents thereby avoiding unnecessary loan document negotiation, (ii) Borrower's counsel delivers title, loan document comments and related matters in a timely fashion throughout the loan closing, (iii) survey and title work are performed early in the process and submitted for Artesia's counsel's review and comments, and (iv) tenant estoppels (SNDAs where applicable) are addressed early in the process. Items that can increase legal fees are, among other non-standard items: complex borrower structures or Tenants in Common structures, the need to take an assignment of existing loan documents and non-standard title and/or survey issues.

**Commitment Fee:** The Borrower must also deposit with Artesia an amount equal to 1% of the Loan Amount ("Commitment Fee") at the time of Lender's Commitment to make the Loan. If an Advance Interest Rate Lock has occurred prior to Lender's Commitment to make the Loan, then a portion of the Rate Lock Deposit equal to 1% of the Loan Amount may be applied by Artesia (at the time of Lender's Commitment to make the Loan) to meet the Commitment Fee at the time of Lender's Commitment to make the Loan. At closing if the Loan closes on or before the Rate Lock Expiration Date, the Borrower shall receive a credit for the Commitment Fee less any non-refundable portion, if any, provided for in this Application, the Commitment or the Advance Interest Rate Lock Agreement (if any).

**Loan Not Closed:** If Artesia accepts this Loan Application or the Borrower accepts Artesia's offer under other terms and the Loan fails to be closed, the Lender shall be entitled to retain and shall retain the Commitment Fee as liquidated damages unless such

failure results solely from Artesia's failure to comply with the terms of the agreement between it and the Borrower, but such liquidated damages shall not waive Lender's right to reimbursement of costs and expenses as provided above.

**Third Party Reports:**  All third party reports will be ordered by Artesia from Artesia approved vendors.

**Insurance Requirements:**  See separate Questionnaire including the Insurance Authorization Form.

**Legal Opinion:**  The Borrower's counsel must provide a valid legal opinion in form, content and from a law firm acceptable to Artesia, addressing without limitation, matters relating to the Borrowing Entity's status as a single asset entity , the due execution, validity and enforceability of the loan documents, the valid existence of the Borrowing Entity, the fact that counsel is authorized to provide the opinion, the Interest Rate is not usurious and that there is no pending or threatened litigation against the Borrower, Guarantor (if applicable), General Partner, Managing Member, etc. If a portion of the Borrower's equity comes from pension or retirement funds, an additional legal opinion must be provided from an attorney familiar with "ERISA" law, stating that the loan will not be a "prohibited transaction" according to ERISA requirements.

**Management:**  The Property will be managed by an entity acceptable to Artesia in accordance with a management agreement approved by Artesia. Such agreement will be subordinate to the Loan.

**Property Financials:**  The Borrower (and Carve-out Guarantors) will be required to furnish Artesia on-going property operating statements, occupancy reports and financial statements in accordance with common securitized lending practices.

**Reserve/Escrow Requirements:**  A non-interest bearing monthly reserve account will be established for taxes and insurance including a one month reserve payable at closing.

An interest bearing replacement reserve account will be established equal to the greater of the annual capital expenditure budget provided in the Physical Condition Report (adjusted for inflation) or $250/unit/year, one twelfth of which must be paid each month. This account will be capped with three years of accumulation and replenished at the same rate if drawn upon.

A non-interest bearing capital reserve account equal to 125% of the estimated cost of repairing/replacing capital or deferred maintenance items will be required to be held at closing for a period necessary to complete the work.

The Lender has underwritten Total Effective Gross Income of $1,335,000 (using a 5% vacancy factor) and Operating Expenses of $662,000 including $250/unit replacement reserves. Because no full year historical statements and only one month of rent rolls were available, the Loan Amount and minimum DSCR coverage is predicated on these numbers and assumptions being substantiated in the underwriting process. Borrower must provide the Lender with operating and occupancy history since owning the property, in order to determine the long term sustainable cash flow from the property.

**Interest Paid on Reserves:**  The interest bearing reserve funds specified above, will bear interest at the 30 day money market rate offered by the bank used by Lender for escrow deposits, and will be held and released by Lender, and used by Borrower, in accordance with the terms and conditions of the reserve agreement. Lender, or its agent, will be entitled to a one-time setup fee in the amount of $250 per reserve account. Borrower shall pay the setup fee for each in-place reserve at closing and Lender, or its agent, is hereby authorized to collect such setup fee from Borrower for any springing reserve at the time such reserve is established. All interest or other income in connection with the deposit or placement of such funds will be reported under Borrower's tax identification number.

| | |
|---|---|
| **Loan Conditions:** | Other conditions applicable to this Loan Application are as follows: |
| **Representation as to Information:** | Borrower certifies that all information set forth in this Application, and all information furnished by Borrower or by a Broker to Lender in connection with this Application, the Questionnaire and the proposed Loan, is and will be true, correct and complete. Borrower further certifies that the person signing this Application on behalf of the Borrower has full authority to bind the Borrower. |

Lender may pay fees (for servicing or other activities) or other compensation to a broker or mortgage banker ("Broker") in connection with or arising out of the closing, funding or sale of the Loan. Such fees/compensation are in addition to any other fees which may be paid directly by Borrower to a Broker. Borrower shall pay all such other brokerage fees associated with the Loan. Borrower agrees to indemnify and hold harmless Lender from and against any losses, costs, liabilities and expenses (including reasonable attorney's fees) on account of any claim made by any Broker or other party for a commission, finder's fee or other similar payment in connection with the Loan. The provisions of this paragraph shall survive the expiration or termination of this Application or the Loan closing.

The Borrower acknowledges that Artesia's consideration of the terms of this Application is also conditioned upon **completion of all information specified in the Questionnaire**, together with receipt of a $5,000 non-refundable Application Fee and a $15,000 Third Party Cost Deposit must be received by Artesia **no later than** November 1, 2006 in order for this Application to be effective and the processing of the Loan to begin.

We understand we may call Douglas Clyde at 425-313-3982 with respect to any questions we have.

Sincerely,

To be Determined Level II SPE ( Milivoje Djordjevich as Principal and Carveout Guarantor)

_[signature]_                                       11-2-06
                                                    Date

Correspondent Acknowledgement:
Johnson Capital Partners of Arizona

_[signature]_                                       11-02-06
                                                    Date

**This Application does not constitute a commitment to make a loan under any terms, and AMCC is under no obligation to accept this Application nor fund the Loan. The terms outlined in this Application are further subject to AMCC's receipt, review and approval of additional information that will be requested from the Borrower. The Borrower further acknowledges that AMCC reserves the right to accept or to not accept this Application after receipt, review and approval of information requested from the Borrower and other sources deemed necessary.**

*Exhibit 2*



# ARTESIA
A DEXIA COMPANY

| Loan Number | Project Name | | | Borrower | Credit Analyst |
|---|---|---|---|---|---|
| 010-00001846 | Coconut Grove Apartments | | | TBF Level II SPE | Andrea Braun |

## FEES RECEIVED FROM BORROWER

| Item | Responsible Party | Received | Amount | Comments |
|---|---|---|---|---|
| Processing | Borrower | Received | $16,000.00 | |
| Lock | Borrower | Received | $154,000.00 | rec'd 12/20/06 |
| Lock | Borrower | Received | $154,000.00 | Margin Call Wire, received 9/14/07. |

## BORROWER INFORMATION

| # | Item | Responsible Party | DueDate | Received | Approved |
|---|---|---|---|---|---|
| 10 | **Financial Statements:**    Signed and dated current financial statement and resume for: 1) Borrowing entity (if currently exists); 2) non-recourse carve-out guarantors; 3) principals with ownership interest (directly or indirectly) of 50% or more; and 4) anyone who has control of or can obligate the borrowing entity. Financial statements must include evidence of liquid assets such as copies of bank or broker statements. | Borrower | | 10/04/07 - Andreab | |
| | **Comments:**    Received PFS for Bojan Djordjevich, Vesna Djordjevich, Goran Djordjevich.  Received a statement of no material changes for Vesna, Bojan and Goran.  Under review. | | | | |
| 20 | **Tax Returns:**    Signed and dated income tax returns (last two years) for: 1) Borrowing entity (if currently exists); 2) non-recourse carve-out guarantors; 3) principals with ownership interest (directly or indirectly) of 50% or more; and 4) anyone who has control of or can obligate the borrowing entity. | Borrower | | | |
| | **Comments:**    Received:<br><br>2005 Tax Return Bojan Djordjevich<br>2005 Tax Return Vesna Djordjevich<br>2005 Tax Return Goran Djordjevich<br><br>Need 2006 returns OR 2006 extension form.<br><br>Need tax returns for Tuscan Grove Properties, LLC. | | | | |
| 30 | **Sources & Uses of Funds:** | Borrower | | | |
| 50 | **Payment History:**    Payment history for the prior 24 months for all existing debt of the Borrower or debt secured by the Property. | Borrower | | | |
| 80 | **Bank Reference:**  Bank references (completion of Borrower Questionnaire). | Borrower | | 10/04/07 - Andreab | |

REAL PROPERTY DUE DILIGENCE

| # | Item | Responsible Party | DueDate | Received | Approved |
|---|------|-------------------|---------|----------|----------|
| 10 | **Operating Statements:**    Operating statements (certified as true and correct).  Operating statements must include monthly statements for (a) the prior twelve (12) months (the "Trailing 12 Report"), (b) the year-to-date, and (c) the last three (3) full years.  Operating statements must include detail on capital improvements and miscellaneous income. | Borrower | | 10/08/07 - Michelles | |
| | **Comments:**    Received 2006 and 2007 statement (through July).<br>Please provide 2007 statement through September when available | | | | |
| 20 | **Operating Budget:**    Current operating budget. | Borrower | | | |
| 30 | **Occupancy Reports:**    Borrower certified historical occupancy reports (monthly rent rolls for the most recent twelve (12) months and average annual occupancy for the last three years).  Rent roll must include the following for each tenant:  tenant name; rent start date; suite/unit number; amount of rent paid; amount of concession (if any); any additional rent (parking, pet fees, etc.) | Borrower | | 10/05/07 - Andreab | |
| | **Comments:**    Received occupancy report and rent roll, under review | | | | |
| 50 | **Bank deposit history:**    (i.e. copies of bank statements for the property for prior 12 months reconciled against the rent roll.) | Borrower | | 10/04/07 - Andreab | |
| | **Comments:**    Bank statements received for June, July, August, and September 2007.  Please provide statements for the months of October 2006 through May 2007 so we have a full year | | | | |
| 210 | **Property Management:**    Copy of the executed property management agreement and management company/agent resume. | Borrower | | | |
| | **Comments:**    self-managed | | | | |
| 250 | **Delinquent Rents:**    Schedule of tenants with delinquent rents in the past 12 months. | Borrower | | 10/04/07 - Andreab | |
| | **Comments:**    Received September 2007 only.  Please provide schedule for the past 12 months.  Please provide a list of the number of skips each month. | | | | |
| 290 | **Cost & Tax Basis:**  Borrower cost and tax basis. | Borrower | | | |
| | **Comments:**    Please provide a list of  major capital improvements made to the property since the purchase.  The list should include the cost of each item. | | | | |
| 300 | **Insurance Certificates:**    Current insurance certificates, current billing, and agent's name and phone number. | Borrower | | | |
| 310 | **Insurance Coverage:**    Insurance coverage as specified in the Loan Application.  Law and Ordinance insurance coverage will be required for properties with a legal, nonconforming use.  AMCC will order evidence of insurance directly from the Borrower's insurance agent.  Borrower to instruct insurance agent to provide evidence of insurance to AMCC within 10 days of signing the Loan Application.  Insurance policies must be pre-paid for twelve months at closing (for purchase), or funds must be held in reserve at closing in an amount sufficient to renew insurance policies (as determined by AMCC) due within 6 months of the closing date (for refinance). | Borrower | | | |
| 360 | **Survey:**    Borrower must provide AMCC within five days of the execution of the Loan Application, the name and address of the Surveyor that the Borrower has engaged to complete the survey.  The Survey must be completed in accordance with the requirements outlined in the Borrower Questionnaire. | Borrower | | 10/23/07 - Andreab | |
| | **Comments:**    Received and under review. | | | | |
| | **O & M Plan Certification:**  Borrower to provide at closing a certification that O & M Plans for both Asbestos and Lead-Based Paint have been implemented. | | | | |

*Exhibit 3*



A R T E S I A
A DEXIA COMPANY

11130 NW Maple St., Ste. 202
Issaquah, Washington 98027

(425) 313.0000  fax 425.313.0905
www.artesiamortgage.com

## ADVANCE INTEREST RATE LOCK AGREEMENT

December 20, 2006

Sent VIA Email to:   Keaton Merrell [keaton.merrell@johnsoncapital.com]]

Mr. Milivoje Djordjevich
c/o Keaton Merrill
Johnson Capital Partners
Phoenix, AZ

| | |
|---|---|
| Loan Number: | 1846 |
| Loan Amount: | $7,700,000 |
| Property Name: | Coconut Grove Apts |
| Property Address: | 2028 West Indian School Road |
| | Phoenix, AZ |

Dear Mr. Djordjevich:

Artesia Mortgage Capital Corporation ("Artesia") hereby expresses its interest to further examine all aspects of the proposed transaction for a fixed rate mortgage loan ("Loan") and to consider making the Loan in the amount of $7,700,000 pursuant to the terms of the Loan Application dated October 27, 2006 ("Application"), including any and all amendments and extensions.  The purpose of this document is to set forth the agreement between you, as the Borrower (as defined in the Application), and Artesia, to the terms and conditions of this Advance Interest Rate Lock Agreement, which terms and conditions relate to the locking of the interest rate applicable to the amount of  $7,700,000 of the Loan (the "Locked Amount") and the deposit of the Rate Lock Deposit (defined below) by the Borrower in connection therewith.

Upon Artesia's receipt of an advance rate lock deposit $154,000 (the "Rate Lock Deposit"), the Borrower may lock the interest rate ("Locked Interest Rate") on the Loan up to November 1, 2007, from and including the Rate Lock Date (defined below), pursuant to a recorded telephone call arranged by Artesia, made on a recorded telephone line (425-313-0702).  The date the interest rate is locked is referred to as the "Rate Lock Date."   Artesia will issue a letter ("Interest Rate Lock Confirmation") to the Borrower confirming the Locked Interest Rate and date through which it is locked ("Rate Lock Expiration Date").  A portion of the Rate Lock Deposit equal to One Percent (1%) of the Loan Amount may be applied to the Commitment Fee at the time Artesia issues the Commitment Letter (defined below).

Upon receipt of all information necessary to complete the underwriting process and upon approval of the Loan by Artesia as evidenced by issuance of a commitment letter (the "Commitment Letter"), the closing of the Loan must meet all conditions as stated in that Commitment Letter to be issued, the Application and any and all amendments and extensions, including this Advance Interest Rate Lock Agreement (collectively, the "Commitment"), and the closing of the Loan must occur on or before the Rate Lock Expiration Date.  Artesia shall process the Application in its normal course of business, and shall do so in good faith in its commercially reasonable discretion.  Artesia's wiring instructions are attached hereto as Exhibit A.

Artesia Mortgage Capital Corporation                      Advance Rate Lock Letter

The balance of the Rate Lock Deposit shall be paid to the Borrower, but Artesia may, at its sole option, require the Borrower and Carve-out Guarantor(s) to execute and deliver a release in form acceptable to Artesia as a condition precedent to its obligation hereunder to return such balance of the Rate Lock Deposit. Thereafter, neither party shall have any further obligation or liability to the other with respect to this matter, except as expressly set forth to the contrary herein.

Please acknowledge acceptance of the terms of this Advance Interest Rate Lock Agreement by signing below and return a copy via facsimile to:

> Artesia Mortgage Capital Corporation
> 1180 NW Maple Street, Suite 202
> Issaquah, WA 98027
> Attn:    Finance Department
> Tel:     425-313-0702 (NOTE: this is a recorded line)
> Fax:    425-313-1005

The Advance Interest Rate Lock Agreement does not imply that a Commitment Letter will be issued if not issued prior to this letter nor that the Loan will be made. This Advance Interest Rate Lock Agreement may not be changed in any way except by a written instrument signed by Lender and Borrower

### ARTESIA MORTGAGE CAPITAL CORPORATION

By:       Douglas Clyde
Title:     Director

Acknowledged and agreed:

Mr. Milivoje Djordjevich

By:
Name:    MIKE DJORDJEVICH
Title:     Owner
Date:     12-21-06

*Exhibit 4*



# ARTESIA
## A DEXIA COMPANY

1180 NW Maple St., Ste. 202
Issaquah, Washington 98027

*tel* 425.313.4600  *fax* 425.313.1005
www.artesiamortgage.com

February 20, 2007

Mr. Milivoje Djordjevich
c/o Keaton Merrill
Johnson Capital Partners
Phoenix, AZ

### INTEREST RATE LOCK CONFIRMATION

| | |
|---|---|
| **Loan Amount:** | $7,700,000 |
| **Property Address:** | Coconut Grove Apts |
| | Phoenix, AZ |
| **Borrowing Entity:** | To be Determined |

Dear Mr. Djordjevich;

This letter confirms your recorded rate lock call with Artesia Mortgage Capital Corporation ("Artesia") on February 16, 2007, locking the interest rate applicable to the Locked Amount (as defined in the Rate Lock Documents [defined below]) on the above loan pursuant to the terms of the Advance Interest Rate Lock Agreement dated December 20, 2006 (the "Rate Lock Document").

The Locked Interest Rate (as defined in the Rate Lock Document) is 5.980% per annum and was based on the yield to maturity of the 10 year U.S. Treasury Note of 4.690% plus a spread of 1.290%. The Rate Lock Expiration Date (as defined in the Rate Lock Document) is November 1, 2007.

This letter confirms Artesia's receipt from you of $154,000 representing the Rate Lock Deposit (as defined in the Rate Lock Document).

Sincerely,

**ARTESIA MORTGAGE CAPITAL CORPORATION**

By: _____
Peter Bontinck, Finance Department

*Exhibit 5*



## ARTESIA
A DEXIA COMPANY

1180 NW Maple St., Ste. 202
Issaquah, Washington 98027

*tel* 425 313 4600  *fax* 425 313 1008
www.artesiamortgage.com

October 31, 2007

Mr. Milivoje Djordjevich
c/o Keaton Merrell
Johnson Capital Partners
5080 North 40th Street
Suite 300
Phoenix, AZ 85018

### COMMITMENT LETTER

| | |
|---|---|
| **Loan Amount:** | $6,400,000.00 |
| **Property Address:** | Coconut Grove Apartments<br>2028 West Indian School Road<br>Phoenix, AZ 85015 |
| **Borrowing Entity:** | To Be Determined |

Dear Mr. Djordjevich:

Artesia Mortgage Capital Corporation ("Artesia") hereby advises that the above referenced loan has been approved and loan processing will continue in accordance with the terms and conditions stated in the Loan Application dated October 27, 2006 (the "Loan Application"). **The Loan Application remains in place with respect to financing the subject property with the following amendments:**

Amendments:

1) The Loan Amount shall be $6,400,000.00.
2) The Loan Amortization Term shall be 25 years.
3) The Interest-Only Period referenced in the Loan Application shall be eliminated.
4) The minimum Debt Service Coverage Ratio shall be 1.15:1.0.
5) The rate lock shall be extended to December 15, 2007, with an increase of 8 basis points.
6) The loan amount remains subject to the actual insurance premium, which premium must not result in a debt service coverage ratio of less than 1.15:1.0.
7) Management fee shall be limited to 3.0% of Effective Gross Income.
8) A preliminary Zoning Analysis based on the Alta Survey has been received. The property is legal non-conforming, so Law & Ordinance insurance will be required.
9) Prior to loan closing Artesia will require verification from Borrower's Insurance Agent that wind insurance is not excluded from Borrower's All-risk Insurance policy.
10) Borrower's insurance policy must comply with all carrier ratings requirements, as outlined in the Borrower Questionnaire.
11) All outstanding city code violations must be resolved prior to closing, evidenced by documents provided by the city.
12) Borrower shall certify that an Operations and Maintenance Plans for Asbestos and Lead-Based Paint have been implemented. Certification form to be prepared by Artesia and signed by the Borrower at closing.
13) Borrower shall provide copies of bank statements that support the income indicated in the Trailing-12 Operating Statements.

14) Borrower shall provide an updated Trailing-12 Operating Statement that includes August, September and October, 2007.
15) Borrower shall pay the cost of unwinding the rate lock to the current loan amount (approximately $30,000).
16) A Repair Reserve shall be established at closing in the amount of $9,250.00. This amount represents 125% of the estimated cost of repairs referenced in the Property Condition Report dated September 11, 2007. This requirement can eliminated if satisfactory evidence is provided prior to loan closing that the repairs have been made. Evidence to include copies of paid receipts and/or photos.
17) Based on the background check for Milivoje Djordevich (performed on his previous two loans with AMCC): the following provisions will be added to the loan documents: a) A provision restricting Milivoje Djordevich from owning any more interest in the borrowing entity that he current owns (i.e., 12.5%); b) A provision restricting Milivoje Djordevich from controlling the borrowing entity; and c) A provision requiring the books and records of the borrowing entity to be maintained by either an accounting firm and/or other certified public accountant.
18) The replacement reserve referenced in the Loan Application shall have a cap of four years.

**Commitment Fee**

The Borrower must countersign and return this letter to Artesia. A portion of the Advance Rate Lock Deposit, equal to 1% of the Loan Amount is, pursuant to the Advance Rate Lock Agreement dated December 20, 2006, the Commitment Fee. The Commitment Fee is to be refunded to the Borrower upon the closing of the Loan except to the extent applied pursuant to the terms of the Loan Application and the terms hereof.

Underwriting Checklist items (see attached) and Legal Checklist items (ask the Borrower's counsel for details) are needed at least 3 days prior to the Commitment Expiration Date to continue processing the Loan as a condition to closing the Loan. The Interest Rate must be locked and all remaining requirements for the disbursement of the Loan must have been received sufficiently in advance of and in satisfactory form to assure completion of processing of the same not less than 3 business days prior to the date of the disbursement of the Loan to the Borrower.

Except for the terms of this letter, the Loan Application remains unchanged, but subject to the closing of the Loan occurring by **December 15, 2007** (the "Commitment Expiration Date" or "Rate Lock Expiration Date").

For Artesia to continue considering the Loan Application as amended by this letter, you must acknowledge your agreement to this Commitment Letter by countersigning and returning it by PDF attached to an email sent to andreab@artesiamortgage.com or by fax to the undersigned at FAX number (425) 313-1005 to be received by Artesia no later than **November 2, 2007** (the "Due Date").

Sincerely,

ARTESIA MORTGAGE CAPITAL CORPORATION

_____
Steve Enfield, Managing Director

Borrower Acceptance:

To Be Determined

_____          _____
                                             Date

*Exhibit 6*



## ARTESIA
A DEXIA COMPANY

1180 NW Maple St., Ste. 202
Issaquah, Washington 98027

tel 425.313.4600   fax 425.313.1005
www.artesiamortgage.com

December 3, 2007

Mr. Milivoje Djordjevich
c/o Keaton Merrell
Johnson Capital Partners
5080 North 40th Street
Suite 300
Phoenix, AZ  85018

### RESTATED COMMITMENT LETTER

**Loan Amount:**        $6,200,000.00

**Property Address:**   Coconut Grove Apartments
                        2028 West Indian School Road
                        Phoenix, AZ  85015

**Borrowing Entity:**   To Be Determined

Dear Mr. Djordjevich:

*This letter restates and supercedes in its entirety that certain Commitment Letter dated October 31, 2007.* Artesia Mortgage Capital Corporation ("Artesia") hereby advises that the above referenced loan has been approved and loan processing will continue in accordance with the terms and conditions stated in the Loan Application dated October 27, 2006 (the "Loan Application"). **The Loan Application remains in place with respect to financing the subject property with the following amendments:**

Amendments:

1) The Loan Amount shall be $6,200,000.00.
2) The Loan Amortization Term shall be 25 years.
3) The Interest-Only Period referenced in the Loan Application shall be eliminated.
4) The minimum Debt Service Coverage Ratio shall be 1.15:1.0.
5) The rate lock shall be extended to December 27, 2007, with an increase of 40 basis points in the interest rate.
6) The loan amount remains subject to the actual insurance premium, which premium must not result in a debt service coverage ratio of less than 1.15:1.0.
7) Management fee shall be limited to 3.0% of Effective Gross Income.
8) A preliminary Zoning Analysis based on the Alta Survey has been received.  The property is legal non-conforming, so Law & Ordinance insurance will be required.
9) Prior to loan closing Artesia will require verification from Borrower's Insurance Agent that wind insurance is not excluded from Borrower's All-risk Insurance policy.
10) Borrower's insurance policy must comply with all carrier ratings requirements, as outlined in the Borrower Questionnaire.
11) All outstanding city code violations must be resolved prior to closing, evidenced by documents provided by the city.
12) Borrower shall certify that an Operations and Maintenance Plans for Asbestos and Lead-Based Paint have been implemented.  Certification form to be prepared by Artesia and signed by the Borrower at closing.

13) Borrower shall provide copies of bank statements that support the income indicated in the Trailing-12 Operating Statements.
14) Borrower shall provide an updated Trailing-12 Operating Statement that includes August, September, October and November 2007.
15) Borrower shall pay for the cost of unwinding the rate lock on 19.5% of the amount which was locked on 02/16/2007 (19.5% of $7.7mm equals $1.5mm, which is the difference between the locked amount and the loan amount). As of the close on Friday Nov 30th, this cost was $75,000.
16) Borrower shall deposit by wire transmission $124,000 for the margin call on the current loan amount by Wednesday December 5, 2007.
17) A Repair Reserve shall be established at closing in the amount of $9,250.00. This amount represents 125% of the estimated cost of repairs referenced in the Property Condition Report dated September 11, 2007. This requirement can eliminated if satisfactory evidence is provided prior to loan closing that the repairs have been made. Evidence to include copies of paid receipts and/or photos.
18) Based on the background check for Milivoje Djordevich (performed on his previous two loans with AMCC): the following provisions will be added to the loan documents: a) A provision restricting Milivoje Djordevich from owning any more interest in the borrowing entity that he current owns (i.e., 12.5%); b) A provision restricting Milivoje Djordevich from controlling the borrowing entity; and c) A provision requiring the books and records of the borrowing entity to be maintained by either an accounting firm and/or other certified public accountant.
19) The replacement reserve referenced in the Loan Application shall have a cap of four years.

**Commitment Fee**

The Borrower must countersign and return this letter to Artesia. A portion of the Advance Rate Lock Deposit, equal to 1% of the Loan Amount is, pursuant to the Advance Rate Lock Agreement dated December 20, 2006, the Commitment Fee. The Commitment Fee is to be refunded to the Borrower upon the closing of the Loan except to the extent applied pursuant to the terms of the Loan Application and the terms hereof.

Underwriting Checklist items (see attached) and Legal Checklist items (ask the Borrower's counsel for details) are needed at least 3 days prior to the Commitment Expiration Date to continue processing the Loan as a condition to closing the Loan. The Interest Rate must be locked and all remaining requirements for the disbursement of the Loan must have been received sufficiently in advance of and in satisfactory form to assure completion of processing of the same not less than 3 business days prior to the date of the disbursement of the Loan to the Borrower.

Except for the terms of this letter, the Loan Application remains unchanged, but subject to the closing of the Loan occurring by **December 27, 2007** (the "Commitment Expiration Date" or "Rate Lock Expiration Date").

For Artesia to continue considering the Loan Application as amended by this letter, you must acknowledge your agreement to this Commitment Letter by countersigning and returning it by PDF attached to an email sent to andreab@artesiamortgage.com or by fax to the undersigned at FAX number (425) 313-1005 to be received by Artesia no later than **December 5, 2007** (the "Due Date").

**If this Restated Commitment Letter is not executed and the funds specified above are not wired to Artesia by Wednesday December 5, 2007 on or before 5:00 p.m. then Artesia will proceed to unwind the rate lock hedge for the entire $7,700,000 loan amount and Mr. Djordjevich will be responsible for payment of all unwind costs as specified in the Advance Rate Lock Agreement dated December 20, 2006. The cost of unwinding the rate lock hedge is currently estimated to be $380,000.00.**

Sincerely,

**ARTESIA MORTGAGE CAPITAL CORPORATION**

Steve Enfield, Managing Director

*Exhibit 7*



THE LAW FIRM OF

# PETER STROJNIK
### ATTORNEY AT LAW

January 11, 2008

Duane L. Paulson, Esq.
Nicole K. Nordquist, Esq.
Best & Flanagan LLP
225 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
*BY E-MAIL ONLY* nnordquist@bestlaw.com; dpaulson@bestlaw.com

Re:     Loan Number 1846
        $7,700,000.00
        Property Name: Coconut Grove
        Property Address: 2028 West Indian School Road, Phoenix, Arizona

Dear Duane and Nicole:

On or about December 20, 2006, Mike Djordjevich negotiated a forward commitment to fund a $7,700,000.00 loan @5.65% for the Coconut Grove refinance. Mr. Djordjevich first paid $16,000.00 in connection with this commitment; thereafter, on 12-20-06 he paid another $154,000.00.

The negotiations and the paperwork regarding this matter were conducted through Mr. Merrell of Johnson Capital. On 09-14-07, at the request of Mr. Merrell, Mr. Djordjevich paid another $154,000.00.

It has been difficult for us to obtain the status of this commitment. Therefore, please consider this e-letter as a request to advise us of the current status of this commitment at your earliest opportunity. Also, we are not confident that we have the entire file on this matter; therefore, we request that you provide us with the entire file by e-mail.

3030 NORTH CENTRAL AVENUE · SUITE 1401 – PHOENIX – ARIZONA – 85012-2712
TEL: 602.297.3019 – FAX: 602.296.0135 – CELL: 602.524.6602 – EMAIL: STROJNIK@AOL.COM
WEBSITE: WWW.STROJNIK.COM

Thank you in advance for your courtesy.

Sincerely,

Peter Strojnik

PS: pjs
CC:

    1.  Client *by hand delivery*

    2.  Keaton Merrell
        Josh Swindell
        Johnson Capital
        5080 North 4th Street, Suite 300
        Phoenix, Arizona 85018
        *BY E-MAIL ONLY* keaton.merrell@johnsoncapital.com
        josh.swindell@johnsoncapital.com

*Exhibit 8*

 **REAL ESTATE CAPITAL MARKETS**

January 17, 2008

**VIA FEDERAL EXPRESS**

MIKE DJORDJEVICH
6040 E. Main Street, Suite 466
Mesa, Arizona 85205

      Re: **Coconut Grove Apartments, Phoenix AZ**

Dear Mr. Djordjevich:

On or about November 2, 2006, you submitted a loan application to Artesia Mortgage Capital Corporation (now known as DEXIA REAL ESTATE CAPITAL MARKETS ["Dexia"]) for a mortgage loan to be secured by the above referenced property (the "Proposed Loan"), together with an application fee and third-party cost deposit totally $16,000.00. (A copy of such loan application, dated October 27, 2006, is attached here as Exhibit A to this letter.) In connection with such loan application, you obtained an advance interest rate lock for such Proposed Loan by depositing $154,000.000 with Dexia as evidenced by an Advance Rate Lock Agreement, dated December 20, 2006, and an Interest Rate Lock Confirmation, dated February 20, 2007 (both of which document are attached to this letter as Exhibit B). Subsequently, there was a margin call on the advance interest rate lock and you submitted a further $154,000.00 to Dexia.

On October 31, 2007, Dexia issued a Commitment Letter stating the terms on which Dexia would make the Proposed Loan. (A copy of the Commitment Letter is attached to letter as Exhibit C.) Such Commitment Letter required, among other things, that you countersign it by November 2, 2007. The Commitment Letter was not executed by you and therefore expired by its terms. On December 2, 2007, Dexia issued a Revised Commitment Letter stating the updated terms on which Dexia would make the Proposed Loan. (A copy of the Revised Commitment Letter is attached to letter as Exhibit D.) Such Revised Commitment Letter required, among other things, that you countersign it by December 5, 2007. The Commitment Letter was not executed by you and expired by its terms. As a result, Dexia has elected not to consider making the Proposed Loan any further. The interest rate lock has been unwound and third party costs incurred in connection with the underwriting and due diligence for the Proposed Loan have been paid. Attached as Exhibit E to this letter is a reconcillation of the funds deposited by you with Dexia in connection with the Proposed Loan and interest rate lock, and enclosed with this letter is a check with the funds being returned to you.

1180 NW Maple Street,     Tel: 425.313.4600                               Page 1
Suite 202                   Fax: 425.313.1005
Issaquah, WA 98027     www.dexia-cmbs.com

Thank you for the opportunity to consider this transaction.  Please let us know if you have any questions.

Sincerely,

DEXIA REAL ESTATE CAPITAL MARKETS,
a Delaware corporation,

By: _____

Les Kutas, Managing Director, Finance

cc:     Peter Strojnik (via email only: strojnik@aol.com)
        Keaton Merrell (via email only: keaton.merrell @johnsoncapital.com)
        Josh Swindell (via email only: josh.swindell@johnsoncapital.com)

<u>Exhibit A</u>

Loan Application

[Attached]



October 27, 2006

Artesia Mortgage Capital Corporation
1180 NW Maple Street, Suite 202
Issaquah, Washington  98027

## LOAN APPLICATION

**Property Address:**      **Coconut Grove Apts**
                          2028 West Indian School Road
                          Phoenix, AZ  85015

**Borrowing Entity:**     To be Determined Level II SPE (Milivoje Djordjevich as Principal and Carve-out
(Guarantor)

The undersigned Borrower, by this Loan Application ("Application"), together with the information provided to
you and to be provided to you concerning the Property referred to above and based upon the representations
made through the information provided and to be provided to you applies to Artesia Mortgage Capital
Corporation its successors and/or assigns (hereinafter referred to as "Artesia" or "Note holder" or "Lender"), for
a loan ("Loan") on terms outlined in this Application as follows.

| | |
|---|---|
| **Loan Amount:** | $7,700,000 |
| **Debt Service Coverage Ratio:** | The final Loan Amount must be able to support a minimum debt service coverage ratio of 1.20 as underwritten by Artesia. |
| **Loan-to-Value:** | The Loan Amount must not exceed 75% of an acceptable MAI appraised value of the Property. |
| **Loan-to-Cost:** | The Loan Amount must not exceed 90% of the Borrower's cost basis (purchase price plus closing costs plus renovation/upgrade expenditures).  Lender understands that the Borrower purchased the property in 2005 when it was 65% occupied and within four months had the building 100% occupied.  Therefore, the Borrower will have owned the property for over two years when the loan is funded and has created value through the turnaround of the property. |
| **Interest Rate Spread:** | 129 basis points including the cost of a forward until November 1, 2007. |
| **Interest Rate:** | The yield to maturity of the 10 Year on-the-run US Treasury (the 'Index') plus the Interest Rate Spread.  Notwithstanding the foregoing, if the Swap Spread, defined as the spread between the US Dollar Interest Rate Swap (equivalent to the afore mentioned US Treasury) and the stated US Treasury, is greater than 56 basis points at the time the Interest Rate is to be locked, then the difference between the current Swap Spread and 56 basis points will be added to the previously stated spread over the US Treasury in calculating the Interest Rate.

The Index as of October 27, 2006, was 4.67%. |
| **Floor Rate:** | In no event will the Interest Rate be less than 5.65% ("Floor Rate"). |

Page 1 of 6

**Interest Rate Lock:**    If the Borrower wishes to lock the Interest Rate in advance of any commitment by the Lender (the "Commitment") (which shall be in the form of a commitment letter issued pursuant to this Application) to make the Loan, upon Borrower's request a separate agreement (the "Advance Interest Rate Lock Agreement") specifying the terms and conditions for such advance Interest Rate lock ("Advance Interest Rate Lock") will be sent to the Borrower, and the Advance Interest Rate Lock Agreement will become a binding contract between Artesia and the Borrower upon Artesia's receipt of the Rate Lock Deposit (as defined in the Advance Interest Rate Lock Agreement) in the form of a wire transfer (wired pursuant to the wiring instructions attached hereto as Exhibit A) or cashier's check made payable to Artesia, and will be subject to the terms and conditions of any Commitment.

If the Borrower wishes to lock the Interest Rate after any Commitment, the Lender will allow the Borrower, subject to the terms and conditions of the Commitment and Borrower's written acceptance thereof and Artesia's receipt of the Commitment Fee (defined below) in the form of a wire transfer (wired pursuant to the wiring instructions attached hereto as Exhibit A) or cashier's check made payable to Artesia. Any Interest Rate locked ("Locked Interest Rate") as permitted above shall be locked from and including the Rate Lock Date (defined below). The "Rate Lock Date" is the date the Interest Rate is locked. Artesia will issue a letter ("Interest Rate Lock Confirmation") to the Borrower confirming the Locked Interest Rate and date through which the Interest Rate is locked ("Rate Lock Expiration Date"). The closing of the Loan must occur on or before the Rate Lock Expiration Date.

Given that the loan is being quoted and priced for a November 1, 2007 closing, it will be necessary for the Borrower to lock the interest rate at the time the Loan Application is executed.

**Interest Method (Day Count):**    The interest will be calculated on the basis of a 360-day year, but will be payable on the basis of the actual number of days elapsed.

**Collateral:**    First lien Deed-of-Trust/Mortgage, Assignment of Leases and Rents, cash collateral accounts established, on-going escrow accounts funded, Letters of Credit posted and UCC-1 Financing Statements all secured by land, improvements and personal property defined as follows:

A 236 Unit Multifamily property known as Coconut Grove Apts located at 2028 West Indian School Road in Phoenix, AZ.

**Loan Term:**    10 years

**Amortization Term:**    30 years  (with first 24 months on an Interest Only basis)

**Borrower Structure:**    The Borrower must be a single purpose entity, which owns no assets other than the Property, incurs no debts other than the Loan and Property level debts (such as accounts payable) and other Property operating expenses, and engages in no business other than the ownership and operation of the Property ('Borrowing Entity'). The single asset entity must adhere to limited purpose and separateness covenants contained in the Loan documents. These covenants will also be incorporated into the organizational documents of the borrowing entity. (Level II)

**Prepayment:**    Prepayment of the Loan will be prohibited prior to the date that is three (3) years from the commencement of the Loan term, or two years and one (1) day after the startup day of any real estate mortgage investment conduit (REMIC) which may acquire the Loan, whichever occurs first ('Lockout Period'). After the Lockout Period, the Borrower will be permitted to pay to Note Holder a defeasance deposit in an amount sufficient to defease the Loan as determined by Note Holder in lieu of a prepayment thereof. The defeasance deposit must be an amount sufficient to purchase direct, non-callable U.S. obligations that provide for payments at least equal to the amount of each monthly installment under the Note for the remainder of the Loan Term. If the Loan has not been defeased, the Borrower will have the

right to pay the Loan, in whole, but not in part, on any of the last three (3) scheduled payment dates (including the Maturity Date) of the Loan term, without paying any prepayment charge.

**Assumption:**  Upon approval of Artesia and payment of a 1% assumption fee; however, the following shall not be deemed to be a transfer for which an assumption fee is required: (i) transfers of up to 49% in the aggregate of limited partner, non-managing member or shareholder interests (as applicable), so long as those persons responsible for the management and control of the Borrower and the Property remain unchanged or any replacement management is approved by Lender, and (ii) transfers of any individual's direct or indirect interests in the Borrower to a spouse or lineal descendant of such individual or to a trust for the benefit of any one or more of such individual, lineal descendant or spouse, so long as those persons responsible for the management and control of the Borrower and the Property remain unchanged or any replacement management is approved by Lender.

**Secondary Debt:**  The Borrower is prohibited from having any other debt, secured or unsecured, other than this Loan and miscellaneous trade payables (not to exceed 4% of the loan amount). This restriction of no additional debt includes any contingent liability such as a Letter of Credit issued on behalf of the Borrower. If a Letter of Credit is required as part of the transaction, it must be an obligation of an individual or entity other than the Borrower. Notwithstanding the above, the Borrower may incur mezzanine debt in the future so long as the combined LTV does not exceed 85% and the combined DSCR is not less than 1.10. This additional debt cannot be secured by the real estate but instead must be secured by the ownership interest only.

**Carve-out Guarantors:**  Borrowing Entity and Mr. Milivoje Djordjevich

**Recourse:**  Non-recourse except for (i) fraud and material misrepresentations; (ii) environmental issues; (iii) misapplication of funds/proceeds; (iv) voluntary bankruptcy; and (v) certain other customary carve-outs which will be recourse to Borrower and Carve-out Guarantors.

**Credit Investigation:**  The Borrower hereby authorizes Artesia and any representative of Artesia to make inquiries regarding the Borrowing Entity and its Principals with respect to the character, general reputation, personal characteristics, financial or credit data. Upon Artesia's request, the Borrower will provide additional information as to such matters as Artesia may require. Further, the Borrower acknowledges that Artesia or representatives of Artesia will be reviewing, processing and examining financial and other information set forth in this Application and any submissions made in connection herewith. Pursuant to that review, Artesia or such representatives may discuss such information with attorneys and/or accountants if necessary. The Borrower and any of the Borrowing Entity's Principals hereby consent to the examination and sharing of this information with attorneys and/or accountants if necessary.

**Loan Broker Fees:**  Specified in a separate agreement between the Loan Broker and the Borrower.

**Title Policy:**  An ALTA Extended Coverage Title Policy (1992 version deleting creditor's right exclusions and arbitration provision) must be issued at closing (title premium to be paid by the Borrower) with endorsements required by Artesia insuring Artesia's first lien position showing the Borrower in fee simple title with no encumbrances or exceptions other than those approved by Artesia. The Borrower must pay any cost of and provide Artesia with a Title Commitment including Exhibits and pro-forma endorsements, with proposed title vesting from an office of or agent of (in which case an acceptable insured closing letter must also be provided to Artesia) for a Title Policy to be issued by one of the following: Chicago Title Insurance Company, First American Title Insurance Company, Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, Transnation Title

Insurance Company, Stewart Title Guaranty Company, Old Republic National Title Insurance Company or Attorney's Title Insurance Fund (the "Fund"), except that the Fund shall be acceptable only if the Property is in Florida.

**Survey:**

The Borrower must pay for and provide Artesia with an ALTA/ACSM Land Title Survey in accordance with the requirements specified in the attached Questionnaire. Borrower must provide Artesia with the name, address and phone number of the Surveyor Borrower will engage, as part of this Loan Application (see Questionnaire).

**Non-Refundable Application Fee:**

A non-refundable Application Fee of $5,000 must be provided along with the execution of this Application in order for this Loan Application to be considered and the processing of the Loan to begin.

**Third Party Cost / Legal Fee Deposit:**

The Borrower must provide a $15,000 Third Party Cost Deposit ("Deposit") that will be used for the cost of the appraisal, environmental, physical condition and credit reports as well as Artesia legal fees, ground lease review (if applicable), flood certificate, insurance review, Dun and Bradstreet reports (if applicable), and a Probable Maximum Loss study (if applicable). This deposit will be applied toward such third party costs (including legal fees), and Borrower agrees to pay the total costs less the Deposit, at closing. All other closing costs such as title insurance, brokerage fees, survey, life-of-loan tax service, fees and expenses of Borrower's legal counsel (including Borrower Legal Opinion), UCC and legal Searches, etc. must be paid by the Borrower separately at or before closing. The Borrower may be required to pay an additional deposit to cover such costs prior to closing the Loan. The Borrower hereby agrees that this is a deposit to be credited against total costs and expenses charged to Borrower, and that all costs associated with the processing and funding of the Loan will be paid by the Borrower on or before funding. Any unused funds from the Deposit will be returned to the Borrower at closing.

Borrower acknowledges that both Borrower and Lender are sensitive to legal fees and costs, and that the Deposit includes a portion for Artesia's base legal fees. The base legal fees are intended to reasonably contemplate the size and complexity of a loan closing based on property type, loan size, number of tenants, etc. The base legal fees anticipate reasonable loan document negotiations and no unusual circumstances, and assume (i) Borrower's counsel is experienced with securitized loan documents thereby avoiding unnecessary loan document negotiation, (ii) Borrower's counsel delivers title, loan document comments and related matters in a timely fashion throughout the loan closing, (iii) survey and title work are performed early in the process and submitted for Artesia's counsel's review and comments, and (iv) tenant estoppels (SNDAs where applicable) are addressed early in the process. Items that can increase legal fees are, among other non-standard items: complex borrower structures or Tenants in Common structures, the need to take an assignment of existing loan documents and non-standard title and/or survey issues.

**Commitment Fee:**

The Borrower must also deposit with Artesia an amount equal to 1% of the Loan Amount ("Commitment Fee") at the time of Lender's Commitment to make the Loan. If an Advance Interest Rate Lock has occurred prior to Lender's Commitment to make the Loan, then a portion of the Rate Lock Deposit equal to 1% of the Loan Amount may be applied by Artesia (at the time of Lender's Commitment to make the Loan) to meet the Commitment Fee at the time of Lender's Commitment to make the Loan. At closing if the Loan closes on or before the Rate Lock Expiration Date, the Borrower shall receive a credit for the Commitment Fee less any non-refundable portion, if any, provided for in this Application, the Commitment or the Advance Interest Rate Lock Agreement (if any).

**Loan Not Closed:**

If Artesia accepts this Loan Application or the Borrower accepts Artesia's offer under other terms and the Loan fails to be closed, the Lender shall be entitled to retain and shall retain the Commitment Fee as liquidated damages unless such

Page 4 of 6

failure results solely from Artesia's failure to comply with the terms of the agreement between it and the Borrower, but such liquidated damages shall not waive Lender's right to reimbursement of costs and expenses as provided above.

**Third Party Reports:**  All third party reports will be ordered by Artesia from Artesia approved vendors.

**Insurance Requirements:**  See separate Questionnaire including the Insurance Authorization Form.

**Legal Opinion:**  The Borrower's counsel must provide a valid legal opinion in form, content and from a law firm acceptable to Artesia, addressing without limitation, matters relating to the Borrowing Entity's status as a single asset entity , the due execution, validity and enforceability of the loan documents, the valid existence of the Borrowing Entity, the fact that counsel is authorized to provide the opinion, the Interest Rate is not usurious and that there is no pending or threatened litigation against the Borrower, Guarantor (if applicable), General Partner, Managing Member, etc.  If a portion of the Borrower's equity comes from pension or retirement funds, an additional legal opinion must be provided from an attorney familiar with "ERISA" law, stating that the loan will not be a "prohibited transaction" according to ERISA requirements.

**Management:**  The Property will be managed by an entity acceptable to Artesia in accordance with a management agreement approved by Artesia.  Such agreement will be subordinate to the Loan.

**Property Financials:**  The Borrower (and Carve-out Guarantors) will be required to furnish Artesia on-going property operating statements, occupancy reports and financial statements in accordance with common securitized lending practices.

**Reserve/Escrow Requirements:**  A non-interest bearing monthly reserve account will be established for taxes and insurance including a one month reserve payable at closing.

An interest bearing replacement reserve account will be established equal to the greater of the annual capital expenditure budget provided in the Physical Condition Report (adjusted for inflation) or $250/unit/year, one twelfth of which must be paid each month.   This account will be capped with three years of accumulation and replenished at the same rate if drawn upon.

A non-interest bearing capital reserve account equal to 125% of the estimated cost of repairing/replacing capital or deferred maintenance items will be required to be held at closing for a period necessary to complete the work.

The Lender has underwritten Total Effective Gross Income of $1,335,000 (using a 5% vacancy factor) and Operating Expenses of $662,000 including $250/unit replacement reserves.  Because no full year historical statements and only one month of rent rolls were available, the Loan Amount and minimum DSCR coverage is predicated on these numbers and assumptions being substantiated in the underwriting process.  Borrower must provide the Lender with operating  and occupancy history since owning the property, in order to determine the long term sustainable cash flow from the property.

**Interest Paid on Reserves:**  The interest bearing reserve funds specified above, will bear interest at the 30 day money market rate offered by the bank used by Lender for escrow deposits, and will be held and released by Lender, and used by Borrower, in accordance with the terms and conditions of the reserve agreement.  Lender, or its agent, will be entitled to a one-time setup fee in the amount of $250 per reserve account. Borrower shall pay the setup fee for each in-place reserve at closing and Lender, or its agent, is hereby authorized to collect such setup fee from Borrower for any springing reserve at the time such reserve is established.  All interest or other income in connection with the deposit or placement of such funds will be reported under Borrower's tax identification number.

Page 5 of 6

**Loan Conditions:**          Other conditions applicable to this Loan Application are as follows:

**Representation as to**      Borrower certifies that all information set forth in this Application, and all
**Information:**              information furnished by Borrower or by a Broker to Lender in connection with this
                             Application, the Questionnaire and the proposed Loan, is and will be true, correct
                             and complete.  Borrower further certifies that the person signing this Application
                             on behalf of the Borrower has full authority to bind the Borrower.


Lender may pay fees (for servicing or other activities) or other compensation to a broker or mortgage banker ("Broker") in connection with or arising out of the closing, funding or sale of the Loan.  Such fees/compensation are in addition to any other fees which may be paid directly by Borrower to a Broker.  Borrower shall pay all such other brokerage fees associated with the Loan.  Borrower agrees to indemnify and hold harmless Lender from and against any losses, costs, liabilities and expenses (including reasonable attorney's fees) on account of any claim made by any Broker or other party for a commission, finder's fee or other similar payment in connection with the Loan.  The provisions of this paragraph shall survive the expiration or termination of this Application or the Loan closing.

The Borrower acknowledges that Artesia's consideration of the terms of this Application is also conditioned upon **completion of all information specified in the Questionnaire**, together with receipt of a $5,000 non-refundable Application Fee and a $15,000 Third Party Cost Deposit must be received by Artesia **no later than** November 1, 2006 in order for this Application to be effective and the processing of the Loan to begin.


We understand we may call Douglas Clyde at 425-313-3982 with respect to any questions we have.



Sincerely,

To be Determined Level II SPE ( Milivoje Djordjevich as Principal and Carveout Guarantor)


_____          _____11-2-06_____
                                                           Date


Correspondent Acknowledgement:
Johnson Capital Partners of Arizona

_____          _____11-02-06_____
                                                           Date


**This Application does not constitute a commitment to make a loan under any terms, and AMCC is under no obligation to accept this Application nor fund the Loan.  The terms outlined in this Application are further subject to AMCC's receipt, review and approval of additional information that will be requested from the Borrower.  The Borrower further acknowledges that AMCC reserves the right to accept or to not accept this Application after receipt, review and approval of information requested from the Borrower and other sources deemed necessary.**



Page 6 of 6

Exhibit B

Advance Rate Lock Agreement and Interest Rate Lock Confirmation
[Attached]





6150 NW Maple St., Ste. 202
Issaquah, Washington 98027
425.313.0600 fax 425.313.0605
www.artesiamortgage.com

## ADVANCE INTEREST RATE LOCK AGREEMENT

December 20, 2006

Sent VIA Email to:  Keaton Merrell [keaton.merrell@johnsoncapital.com]]

Mr. Milivoje Djordjevich
c/o Keaton Merrill
Johnson Capital Partners
Phoenix, AZ

| | |
|---|---|
| Loan Number: | 1846 |
| Loan Amount: | $7,700,000 |
| Property Name: | Coconut Grove Apts |
| Property Address: | 2028 West Indian School Road |
| | Phoenix, AZ |

Dear Mr. Djordjevich:

Artesia Mortgage Capital Corporation ("Artesia") hereby expresses its interest to further examine all aspects of the proposed transaction for a fixed rate mortgage loan ("Loan") and to consider making the Loan in the amount of $7,700,000 pursuant to the terms of the Loan Application dated October 27, 2006 ("Application"), including any and all amendments and extensions.  The purpose of this document is to set forth the agreement between you, as the Borrower (as defined in the Application), and Artesia, to the terms and conditions of this Advance Interest Rate Lock Agreement, which terms and conditions relate to the locking of the interest rate applicable to the amount of  $7,700,000 of the Loan (the "Locked Amount") and the deposit of the Rate Lock Deposit (defined below) by the Borrower in connection therewith.

Upon Artesia's receipt of an advance rate lock deposit $154,000 (the "Rate Lock Deposit"), the Borrower may lock the interest rate ("Locked Interest Rate") on the Loan up to November 1, 2007, from and including the Rate Lock Date (defined below), pursuant to a recorded telephone call arranged by Artesia, made on a recorded telephone line (425-313-0702).  The date the interest rate is locked is referred to as the "Rate Lock Date."  Artesia will issue a letter ("Interest Rate Lock Confirmation") to the Borrower confirming the Locked Interest Rate and date through which it is locked ("Rate Lock Expiration Date").  A portion of the Rate Lock Deposit equal to One Percent (1%) of the Loan Amount may be applied to the Commitment Fee at the time Artesia issues the Commitment Letter (defined below).

Upon receipt of all information necessary to complete the underwriting process and upon approval of the Loan by Artesia as evidenced by issuance of a commitment letter (the "Commitment Letter"), the closing of the Loan must meet all conditions as stated in that Commitment Letter to be issued, the Application and any and all amendments and extensions, including this Advance Interest Rate Lock Agreement (collectively, the "Commitment"), and the closing of the Loan must occur on or before the Rate Lock Expiration Date.  Artesia shall process the Application in its normal course of business, and shall do so in good faith in its commercially reasonable discretion.  Artesia's wiring instructions are attached hereto as Exhibit A.

**Artesia Mortgage Capital Corporation**                                    Advance Rate Lock Letter

The balance of the Rate Lock Deposit shall be paid to the Borrower, but Artesia may, at its sole option, require the Borrower and Carve-out Guarantor(s) to execute and deliver a release in form acceptable to Artesia as a condition precedent to its obligation hereunder to return such balance of the Rate Lock Deposit. Thereafter, neither party shall have any further obligation or liability to the other with respect to this matter, except as expressly set forth to the contrary herein.

Please acknowledge acceptance of the terms of this Advance Interest Rate Lock Agreement by signing below and return a copy via facsimile to:

> Artesia Mortgage Capital Corporation
> 1180 NW Maple Street, Suite 202
> Issaquah, WA  98027
> Attn:    Finance Department
> Tel:     425-313-0702 (NOTE: this is a recorded line)
> Fax:     425-313-1005

The Advance Interest Rate Lock Agreement does not imply that a Commitment Letter will be issued if not issued prior to this letter nor that the Loan will be made. This Advance Interest Rate Lock Agreement may not be changed in any way except by a written instrument signed by Lender and Borrower

### ARTESIA MORTGAGE CAPITAL CORPORATION

> By:      Douglas Clyde
> Title:   Director

Acknowledged and agreed:

> Mr. Milivoje Djordjevich
> By:
> Name:    MIKE DJORDJEVICH
> Title:   Owner
> Date:    12-21-06

---



# ARTESIA
A DEXIA COMPANY

1180 NW Maple St., Ste. 202
Issaquah, Washington 98027

*tel* 425.313.4600  *fax* 425.313.1005
www.artesiamortgage.com

February 20, 2007

Mr. Milivoje Djordjevich
c/o Keaton Merrill
Johnson Capital Partners
Phoenix, AZ

## INTEREST RATE LOCK CONFIRMATION

**Loan Amount:**       $7,700,000
**Property Address:**  Coconut Grove Apts
                       Phoenix, AZ

**Borrowing Entity:**  To be Determined

Dear Mr. Djordjevich;

This letter confirms your recorded rate lock call with Artesia Mortgage Capital Corporation ("Artesia") on February 16, 2007, locking the interest rate applicable to the Locked Amount (as defined in the Rate Lock Documents [defined below]) on the above loan pursuant to the terms of the Advance Interest Rate Lock Agreement dated December 20, 2006 (the "Rate Lock Document").

The Locked Interest Rate (as defined in the Rate Lock Document) is 5.980% per annum and was based on the yield to maturity of the 10 year U.S. Treasury Note of 4.690% plus a spread of 1.290%.  The Rate Lock Expiration Date (as defined in the Rate Lock Document) is November 1, 2007.

This letter confirms Artesia's receipt from you of $154,000 representing the Rate Lock Deposit (as defined in the Rate Lock Document).

Sincerely,

**ARTESIA MORTGAGE CAPITAL CORPORATION**

By: _____
      Peter Bontinck, Finance Department

---

Rate Lock Confirmation

010-00001846
02/20/07

Page 1 of 1

Exhibit C

Commitment Letter

[Attached]



**ARTESIA**
A DEXIA COMPANY

1180 NW Maple St., Ste. 202
Issaquah, Washington 98027

tel 425.313.4600  fax 425.313.4605
www.artesiamortgage.com

October 31, 2007

Mr. Milivoje Djordjevich
c/o Keaton Merrell
Johnson Capital Partners
5080 North 40th Street
Suite 300
Phoenix, AZ 85018

<u>COMMITMENT LETTER</u>

**Loan Amount:**         $6,400,000.00

**Property Address:**    Coconut Grove Apartments
                         2028 West Indian School Road
                         Phoenix, AZ 85015

**Borrowing Entity:**    To Be Determined

Dear Mr. Djordjevich:

Artesia Mortgage Capital Corporation ("Artesia") hereby advises that the above referenced loan has been approved and loan processing will continue in accordance with the terms and conditions stated in the Loan Application dated October 27, 2006 (the "Loan Application"). **The Loan Application remains in place with respect to financing the subject property with the following amendments:**

**Amendments:**

1) The Loan Amount shall be $6,400,000.00.
2) The Loan Amortization Term shall be 25 years.
3) The Interest-Only Period referenced in the Loan Application shall be eliminated.
4) The minimum Debt Service Coverage Ratio shall be 1.15:1.0.
5) The rate lock shall be extended to December 15, 2007, with an increase of 8 basis points.
6) The loan amount remains subject to the actual insurance premium, which premium must not result in a debt service coverage ratio of less than 1.15:1.0.
7) Management fee shall be limited to 3.0% of Effective Gross Income.
8) A preliminary Zoning Analysis based on the Alta Survey has been received. The property is legal non-conforming, so Law & Ordinance insurance will be required.
9) Prior to loan closing Artesia will require verification from Borrower's Insurance Agent that wind insurance is not excluded from Borrower's All-risk Insurance policy.
10) Borrower's insurance policy must comply with all carrier ratings requirements, as outlined in the Borrower Questionnaire.
11) All outstanding city code violations must be resolved prior to closing, evidenced by documents provided by the city.
12) Borrower shall certify that an Operations and Maintenance Plans for Asbestos and Lead-Based Paint have been implemented. Certification form to be prepared by Artesia and signed by the Borrower at closing.
13) Borrower shall provide copies of bank statements that support the income indicated in the Trailing-12 Operating Statements.

14) Borrower shall provide an updated Trailing-12 Operating Statement that includes August, September and October, 2007.
15) Borrower shall pay the cost of unwinding the rate lock to the current loan amount (approximately $30,000).
16) A Repair Reserve shall be established at closing in the amount of $9,250.00. This amount represents 125% of the estimated cost of repairs referenced in the Property Condition Report dated September 11, 2007. This requirement can eliminated if satisfactory evidence is provided prior to loan closing that the repairs have been made. Evidence to include copies of paid receipts and/or photos.
17) Based on the background check for Milivoje Djordevich (performed on his previous two loans with AMCC): the following provisions will be added to the loan documents: a) A provision restricting Milivoje Djordevich from owning any more interest in the borrowing entity that he current owns (i.e., 12.5%); b) A provision restricting Milivoje Djordevich from controlling the borrowing entity; and c) A provision requiring the books and records of the borrowing entity to be maintained by either an accounting firm and/or other certified public accountant.
18) The replacement reserve referenced in the Loan Application shall have a cap of four years.

**Commitment Fee**

The Borrower must countersign and return this letter to Artesia. A portion of the Advance Rate Lock Deposit, equal to 1% of the Loan Amount is, pursuant to the Advance Rate Lock Agreement dated December 20, 2006, the Commitment Fee. The Commitment Fee is to be refunded to the Borrower upon the closing of the Loan except to the extent applied pursuant to the terms of the Loan Application and the terms hereof.

Underwriting Checklist items (see attached) and Legal Checklist items (ask the Borrower's counsel for details) are needed at least 3 days prior to the Commitment Expiration Date to continue processing the Loan as a condition to closing the Loan. The Interest Rate must be locked and all remaining requirements for the disbursement of the Loan must have been received sufficiently in advance of and in satisfactory form to assure completion of processing of the same not less than 3 business days prior to the date of the disbursement of the Loan to the Borrower.

Except for the terms of this letter, the Loan Application remains unchanged, but subject to the closing of the Loan occurring by **December 15, 2007** (the "Commitment Expiration Date" or "Rate Lock Expiration Date").

For Artesia to continue considering the Loan Application as amended by this letter, you must acknowledge your agreement to this Commitment Letter by countersigning and returning it by PDF attached to an email sent to andreab@artesiamortgage.com or by fax to the undersigned at FAX number (425) 313-1005 to be received by Artesia no later than **November 2, 2007** (the "Due Date").

Sincerely,

ARTESIA MORTGAGE CAPITAL CORPORATION

Steve Enfield, Managing Director

Borrower Acceptance:

To Be Determined

_____          _____
                                                                    Date

Correspondent Acknowledgement:

Johnson Capital Partners

_____          _____
                                          Date



# ARTESIA
## A DEXIA COMPANY

| Loan Number | Project Name | | Borrower | Credit Analyst |
|---|---|---|---|---|
| 010-00001846 | Coconut Grove Apartments | | TBF Level II SPE | Andrea Braun |

**FEES RECEIVED FROM BORROWER**

| Item | Responsible Party | Received | Amount | Comments |
|---|---|---|---|---|
| Processing | Borrower | Received | $16,000.00 | |
| Lock | Borrower | Received | $154,000.00 | rec'd 12/20/06 |
| Lock | Borrower | Received | $154,000.00 | Margin Call  Wire, received 9/14/07. |

**BORROWER INFORMATION**

| # | Item | Responsible Party | DueDate | Received | Approved |
|---|---|---|---|---|---|
| 10 | **Financial Statements:**    Signed and dated current financial statement and resume for: 1) Borrowing entity (if currently exists); 2) non-recourse carve-out guarantors; 3) principals with ownership interest (directly or indirectly) of 50% or more; and 4) anyone who has control of or can obligate the borrowing entity. Financial statements must include evidence of liquid assets such as copies of bank or broker statements. | Borrower | | 10/04/07 - Andreab | |
| | **Comments:**    Received PFS for Bojan Djordjevich, Vesna Djordjevich, Goran Djordjevich.  Received a statement of no material changes for Vesna, Bojan and Goran.  Under review | | | | |
| 20 | **Tax Returns:**    Signed and dated income tax returns (last two years) for: 1) Borrowing entity (if currently exists); 2) non-recourse carve-out guarantors; 3) principals with ownership interest (directly or indirectly) of 50% or more; and 4) anyone who has control of or can obligate the borrowing entity. | Borrower | | | |
| | **Comments:**    Received:<br><br>2005 Tax Return Bojan Djordjevich<br>2005 Tax Return Vesna Djordjevich<br>2005 Tax Return Goran Djordjevich<br><br>Need 2006 returns OR 2006 extension form.<br><br>Need tax returns for Tuscan Grove Properties, LLC. | | | | |
| 30 | **Sources & Uses of Funds:** | Borrower | | | |
| 50 | **Payment History:**    Payment history for the prior 24 months for all existing debt of the Borrower or debt secured by the Property. | Borrower | | | |
| 80 | **Bank Reference:**    Bank references (completion of Borrower Questionnaire). | Borrower | | 10/04/07 - Andreab | |

<u>REAL PROPERTY DUE DILIGENCE</u>

| # | Item | Responsible Party | DueDate | Received | Approved |
|---|------|-------------------|---------|----------|----------|
| 10 | **Operating Statements:**    Operating statements (certified as true and correct).  Operating statements must include monthly statements for (a) the prior twelve (12) months (the "Trailing 12 Report"), (b) the year-to-date, and (c) the last three (3) full years.  Operating statements must include detail on capital improvements and miscellaneous income. | Borrower | | 10/08/07 - Michelles | |
| | **Comments:**    Received 2006 and 2007 statement (through July)<br>Please provide 2007 statement through September when available | | | | |
| 20 | **Operating Budget:**    Current operating budget. | Borrower | | | |
| 30 | **Occupancy Reports:**    Borrower certified historical occupancy reports (monthly rent rolls for the most recent twelve (12) months and average annual occupancy for the last three years).  Rent roll must include the following for each tenant:  tenant name; rent start date; suite/unit number; amount of rent paid; amount of concession (if any); any additional rent (parking, pet fees, etc.) | Borrower | | 10/05/07 - Andreab | |
| | **Comments:**    Received occupancy report and rent roll; under review. | | | | |
| 50 | **Bank deposit history:**    (i.e. copies of bank statements for the property for prior 12 months reconciled against the rent roll.) | Borrower | | 10/04/07 - Andreab | |
| | **Comments:**    Bank statements received for June, July, August, and September 2007.  Please provide statements for the months of October 2006 through May 2007 so we have a full yea | | | | |
| 210 | **Property Management:**    Copy of the executed property management agreement and management company/agent resume. | Borrower | | | |
| | **Comments:**    self-managed | | | | |
| 250 | **Delinquent Rents:**    Schedule of tenants with delinquent rents in the past 12 months. | Borrower | | 10/04/07 - Andreab | |
| | **Comments:**    Received September 2007 only.  Please provide schedule for the past 12 months.  Please provide a list of the number of skips each month. | | | | |
| 290 | **Cost & Tax Basis:**  Borrower cost and tax basis. | Borrower | | | |
| | **Comments:**    Please provide a list of major capital improvements made to the property since the purchase.  The list should include the cost of each item. | | | | |
| 300 | **Insurance Certificates:**    Current insurance certificates, current billing, and agent's name and phone number. | Borrower | | | |
| 310 | **Insurance Coverage:**    Insurance coverage as specified in the Loan Application.  Law and Ordinance insurance coverage will be required for properties with a legal, nonconforming use.  AMCC will order evidence of insurance directly from the Borrower's insurance agent.  Borrower to instruct insurance agent to provide evidence of insurance to AMCC within 10 days of signing the Loan Application.  Insurance policies must be pre-paid for twelve months at closing (for purchase), or funds must be held in reserve at closing in an amount sufficient to renew insurance policies (as determined by AMCC) due within 6 months of the closing date (for refinance). | Borrower | | | |
| 360 | **Survey:**  Borrower must provide AMCC within five days of the execution of the Loan Application, the name and address of the Surveyor that the Borrower has engaged to complete the survey.  The Survey must be completed in accordance with the requirements outlined in the Borrower Questionnaire. | Borrower | | 10/23/07 - Andreab | |
| | **Comments:**    Received and under review. | | | | |
| | **O & M Plan Certification:**  Borrower to provide at closing a certification that O & M Plans for both Asbestos and Lead-Based Paint have been implemented. | | | | |

<u>Exhibit D</u>

Revised Commitment Letter
[Attached]



# ARTESIA

A DEXIA COMPANY

1180 NW Maple St., Ste. 202
Issaquah, Washington 98027

tel 425.313.4600  fax 425.313.4605
www.artesiamortgage.com

December 3, 2007

Mr. Milivoje Djordjevich
c/o Keaton Merrell
Johnson Capital Partners
5080 North 40th Street
Suite 300
Phoenix, AZ  85018

## RESTATED COMMITMENT LETTER

| | |
|---|---|
| **Loan Amount:** | $6,200,000.00 |
| **Property Address:** | Coconut Grove Apartments<br>2028 West Indian School Road<br>Phoenix, AZ  85015 |
| **Borrowing Entity:** | To Be Determined |

Dear Mr. Djordjevich:

*This letter restates and supercedes in its entirety that certain Commitment Letter dated October 31, 2007.* Artesia Mortgage Capital Corporation ("Artesia") hereby advises that the above referenced loan has been approved and loan processing will continue in accordance with the terms and conditions stated in the Loan Application dated October 27, 2006 (the "Loan Application"). **The Loan Application remains in place with respect to financing the subject property with the following amendments:**

Amendments:

1) The Loan Amount shall be $6,200,000.00.
2) The Loan Amortization Term shall be 25 years.
3) The Interest-Only Period referenced in the Loan Application shall be eliminated.
4) The minimum Debt Service Coverage Ratio shall be 1.15:1.0.
5) The rate lock shall be extended to December 27, 2007, with an increase of 40 basis points in the interest rate.
6) The loan amount remains subject to the actual insurance premium, which premium must not result in a debt service coverage ratio of less than 1.15:1.0.
7) Management fee shall be limited to 3.0% of Effective Gross Income.
8) A preliminary Zoning Analysis based on the Alta Survey has been received.  The property is legal non-conforming, so Law & Ordinance insurance will be required.
9) Prior to loan closing Artesia will require verification from Borrower's Insurance Agent that wind insurance is not excluded from Borrower's All-risk Insurance policy.
10) Borrower's insurance policy must comply with all carrier ratings requirements, as outlined in the Borrower Questionnaire.
11) All outstanding city code violations must be resolved prior to closing, evidenced by documents provided by the city.
12) Borrower shall certify that an Operations and Maintenance Plans for Asbestos and Lead-Based Paint have been implemented.  Certification form to be prepared by Artesia and signed by the Borrower at closing.

13) Borrower shall provide copies of bank statements that support the income indicated in the Trailing-12 Operating Statements.

14) Borrower shall provide an updated Trailing-12 Operating Statement that includes August, September, October and November 2007.

15) Borrower shall pay for the cost of unwinding the rate lock on 19.5% of the amount which was locked on 02/16/2007 (19.5% of $7.7mm equals $1.5mm, which is the difference between the locked amount and the loan amount). As of the close on Friday Nov 30th, this cost was $75,000.

16) Borrower shall deposit by wire transmission $124,000 for the margin call on the current loan amount by Wednesday December 5, 2007.

17) A Repair Reserve shall be established at closing in the amount of $9,250.00. This amount represents 125% of the estimated cost of repairs referenced in the Property Condition Report dated September 11, 2007. This requirement can eliminated if satisfactory evidence is provided prior to loan closing that the repairs have been made. Evidence to include copies of paid receipts and/or photos.

18) Based on the background check for Milivoje Djordevich (performed on his previous two loans with AMCC): the following provisions will be added to the loan documents: a) A provision restricting Milivoje Djordevich from owning any more interest in the borrowing entity that he current owns (i.e., 12.5%); b) A provision restricting Milivoje Djordevich from controlling the borrowing entity; and c) A provision requiring the books and records of the borrowing entity to be maintained by either an accounting firm and/or other certified public accountant.

19) The replacement reserve referenced in the Loan Application shall have a cap of four years.

**Commitment Fee**

The Borrower must countersign and return this letter to Artesia. A portion of the Advance Rate Lock Deposit, equal to 1% of the Loan Amount is, pursuant to the Advance Rate Lock Agreement dated December 20, 2006, the Commitment Fee. The Commitment Fee is to be refunded to the Borrower upon the closing of the Loan except to the extent applied pursuant to the terms of the Loan Application and the terms hereof.

Underwriting Checklist items (see attached) and Legal Checklist items (ask the Borrower's counsel for details) are needed at least 3 days prior to the Commitment Expiration Date to continue processing the Loan as a condition to closing the Loan. The Interest Rate must be locked and all remaining requirements for the disbursement of the Loan must have been received sufficiently in advance of and in satisfactory form to assure completion of processing of the same not less than 3 business days prior to the date of the disbursement of the Loan to the Borrower.

Except for the terms of this letter, the Loan Application remains unchanged, but subject to the closing of the Loan occurring by **December 27, 2007** (the "Commitment Expiration Date" or "Rate Lock Expiration Date").

For Artesia to continue considering the Loan Application as amended by this letter, you must acknowledge your agreement to this Commitment Letter by countersigning and returning it by PDF attached to an email sent to andreab@artesiamortgage.com or by fax to the undersigned at FAX number (425) 313-1005 to be received by Artesia no later than **December 5, 2007** (the "Due Date").

**If this Restated Commitment Letter is not executed and the funds specified above are not wired to Artesia by Wednesday December 5, 2007 on or before 5:00 p.m. then Artesia will proceed to unwind the rate lock hedge for the entire $7,700,000 loan amount and Mr. Djordjevich will be responsible for payment of all unwind costs as specified in the Advance Rate Lock Agreement dated December 20, 2006. The cost of unwinding the rate lock hedge is currently estimated to be $380,000.00.**

Sincerely,

ARTESIA MORTGAGE CAPITAL CORPORATION

Steve Enfield, Managing Director

Borrower Acceptance:

To Be Determined

_____          _____
                                                Date


Correspondent Acknowledgement:

Johnson Capital Partners

_____          _____
                                                Date

<u>Exhibit E</u>

Reconciliation of Funds

[Attached]

016075/270259/680370_1

# *AMCC Processing Fee*

| Borrower Name: | TBF Level II SPE, |
|---|---|
| Loan Number: | 010-00001846 |
| Property: | Coconut Grove Apartments |
| Loan Amount: | $7,700,000.00 |

| Date | Item | *Adjustments | | |
|---|---|---|---|---|
| | | | | $324,000.00 |
| 11/13/06 | Funds Rec'd | | | |
| | Application Fee | $4,000.00 | $0.00 | $4,000.00 |

| | | | $320,000.00 |
|---|---|---|---|

| | | Costs | |
|---|---|---|---|
| | D & B Report ($55) | $0.00 | |
| pd. 11/06/07 ab | Appraisal Report | $7,500.00 | Kalinowski & Associates |
| pd. 11/06/07 ab | **Phase I - PCR Report | $4,250.00 | Bay Design |
| | PML Study | $0.00 | |
| | PML Report | $0.00 | |
| pd. 12/13/07 ab | Credit Reports/Legal Searches | $1,275.00 | NCO - amount confirmed |
| | Flood Certification ($20) | $0.00 | |
| | Zoning Letter | $0.00 | |
| pd. 11/06/07 ab | O & M Plan | $500.00 | Asbestos & Lead-based paint |
| | Aerial Photo | $0.00 | |
| pd. 12/13/07 ab | Traxler & Tong - Insurance Consultant | $300.00 | amount confirmed |
| | Site Inspection | $0.00 | AMCC to pay - pald VS 09/20/07 |
| pd. 12/14/07 ab | Zoning Report | $690.00 | payable to Carter Burgess - amount confirmed |
| pd. 12/13/07 ab | Best & Flanagan Legal Expenses | $10,881.18 | amount confirmed |
| | Other [specify] | $0.00 | |
| | Cost of Unwinding Hedge | $233,000.00 | amount confirmed |
| | Other [specify] | $0.00 | |
| | Other [specify] | $0.00 | |
| | Title Cancellation Fee (If the loan is withdrawn) | $0.00 | |
| | Post-Closing Recording Fees | $0.00 | |

| | Subtotal: | $258,396.18 |
|---|---|---|

*Includes adjustment for increase in legal costs for escrow ltr
**Includes PML Report (Seismic)

| Subtotal: | $61,603.82 |
|---|---|
| Balance Due from Borrower: | $0.00 |
| *Refund Due to Borrower: | $61,603.82 |

*NOTE: REFUNDS ARE ONLY DUE UPON MANAGEMENT APPROVAL

Certified by:

_____

Management Approval, if required:

_____

12/14/07 08:14 AM