**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Milivoje Djordjevich and Milomirka Djordjevich, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Dexia Real Estate Capital Markets, a Delaware Corporation; Artesia Mortgage Capital Corporation, a foreign entity,<br><br>    Defendants. | No. CV-08-0288-PHX-DGC<br><br>**ORDER** |

Plaintiffs Milivoje Djordjevich and Milomirka Djordjevich have filed a motion for partial summary judgment on their claim for breach of contract. Dkt. #23. Defendants Dexia Real Estate Capital Markets and Artesia Mortgage Capital Corporation have filed a response and cross-motion for partial summary judgment on the same claim. Dkt. #28. The motions have been fully briefed. Dkt. ##29, 31. For reasons stated below, the Court will grant Plaintiffs' motion for partial summary judgment with respect to liability and deny the motion with respect to damages. The Court will deny Defendants' cross-motion for partial summary judgment.[1]

---

[1] The request for oral argument is denied because the parties have thoroughly briefed the law and evidence and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

**I.    Background.**

On November 2, 2006, Plaintiffs submitted to Defendants an application for a loan for $7.7 million, to be secured by property known as Coconut Grove Apartments. Dkt. #1 ¶ 6. On December 20, 2006, Plaintiffs and Defendants entered into an Advance Interest Rate Lock Agreement ("Rate Lock Agreement") which stated that upon Defendants' receipt of $154,000, Plaintiffs would lock the interest rate on the proposed $7.7 million loan through November 1, 2007. Dkt. #27-2 at 12. Plaintiffs paid the money, and on February 20, 2007, Defendants sent an interest rate lock confirmation acknowledging receipt of the deposit and confirming that the interest rate of 5.980% was locked until November 1, 2007. Dkt. #25 at 41.[2] Both the loan application and the Rate Lock Agreement stated that a loan offer could only be made through the issuance of a commitment letter and that Defendants were under no obligation to make a loan offer. Dkt. ## 27-2 at 14, 21.

On October 31, 2007, the day before the Rate Lock Agreement was to expire, Defendants sent a commitment letter to Plaintiffs stating that a loan to Plaintiffs was approved for a reduced amount of $6.4 million and an increase of 8 basis points in the interest rate. Dkt. #27-2 at 23. This letter also stated that the Rate Lock Agreement was extended until December 15, 2007. *Id.* Plaintiffs did not sign the commitment letter. Dkt. #1 ¶ 15. On December 3, 2007, Defendants sent Plaintiffs a restated commitment letter, stating that loan was now approved for only $6.2 million and an increase of 40 basis points in the interest rate. Dkt. #27-2 at 26. Plaintiffs did not sign the restated commitment letter. Dkt. #1 ¶ 19.

---

[2]Plaintiffs contend that they paid an additional $154,000 on September 14, 2007 to extend the Rate Lock Expiration Date by one year. Defendants claim that this money was paid in response to a margin call on the hedge Defendants made to reduce the risk they took by locking the interest rate. This factual dispute does not preclude summary judgment because Defendants breached the Rate Lock Agreement when they issued a loan commitment letter on October 31, 2007, for an interest rate above the locked rate.

- 2 -

On January 17, 2008, Defendants advised Plaintiffs that Defendants were no longer considering the proposed loan because Plaintiffs failed to sign either commitment letter, and that Defendants were retaining $258,396.18 in costs. *Id.* ¶¶ 21-22. Defendants attempted to refund $61,603.82 – the amount of the rate lock deposit less Defendants' costs – but Plaintiffs refused to accept the refund. Dkt. #27 ¶35-36.

Plaintiffs filed suit against Defendants claiming breach of contract and bad faith, fraud in the inducement, specific performance, scheme or artifice to defraud, and negligence. Dkt. #1. On July 31, 2008, Plaintiffs moved for partial summary judgment with respect to the breach of contract claim and requested $308,000 in damages. Dkt. #23. On September 2, 2008, Defendants cross-moved for partial summary judgment with respect to the breach of contract claim. Dkt. #28.

**II.     Summary judgment legal standard.**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Breach of contract claim.**

Plaintiffs argue that Defendants breached the Rate Lock Agreement by issuing two commitment letters with an interest rate above the locked rate. Defendants contend that the Rate Lock Agreement was not a binding agreement and there was, therefore, no contract to be breached.

"Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face." *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. App. 1975); *see Chandler Med. Bldg. Partners v. Chandler Dental Group*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993).

Words in a contract are to be given their plain and ordinary meaning. *See Horton v. Mitchell*, 29 P.3d 870, 874 (Ariz. Ct. App. 2001). "Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 109 P.3d 959, 963 (Ariz. Ct. App. 2005). The Court concludes that the contract in this case can have only one meaning.

Defendants prepared the document titled "Advance Interest Rate Lock Agreement." Dkt. #25, Ex. 3. The Agreement stated that its purpose was "to set forth *the agreement* between you, as the Borrower (as defined in the Application), and Artesia, as to the conditions of this Advance Interest Rate Lock Agreement, which terms relate to the *locking of the interest rate* applicable to the amount of $7,700,000 of the Loan (the "*Locked Amount*")[.]" *Id*. (emphasis added). The Agreement provided that upon Plaintiffs' payment of $154,000, Plaintiffs "may *lock* the interest rate ("*Locked Interest Rate*") on the Loan up to November 1, 2007[.]" *Id*. (emphasis added). Defendants' form loan application stated that "the Advance Interest Rate Lock Agreement will become *a binding contract* between Artesia and the Borrower upon Artesia's receipt of the Rate Lock Deposit." Dkt. #27-2 at 17 (emphasis added). Plaintiffs made the deposit, and Defendants responded with a document titled "Interest Rate Lock Confirmation" which stated that "[t]he Locked Interest Rate (as defined in the Rate Lock Document) is 5.980% per annum." Dkt. #25, Ex. 4.

A binding contract clearly was intended. The meaning of the contract is clear. To "lock" means to fasten, secure, or fix firmly or irrevocably. *See* Oxford English Dictionary Online, http://dictionary.oed.com. The clear intent of the Rate Lock Agreement was to require Defendants to make the loan offer, if at all, at the locked interest rate and the locked loan amount. Defendant could elect not to make the loan, but if they chose to profit from the loan to Plaintiffs they were obligated to make the loan at the locked rate and locked amount. By making a loan offer at a higher interest rate and lower loan amount, Defendants breached the terms of the Rate Lock Agreement.

**IV.     Damages.**

Plaintiffs contend that they are entitled to $308,000 in damages, representing their two payments of $154,000. In the alternative, Plaintiffs argue that they are entitled to their rate lock deposit less the amount it cost Defendants to unwind the hedge. Plaintiffs calculate that cost by multiplying the difference in the treasury yield interest rate at the time the Rate Lock Agreement was made and the time the Defendants unwound the hedge by the amount of the loan. Dkt. #29 at 9. Using this method, Plaintiffs calculate that it cost $39,270 to unwind the hedge. *Id.*

Defendants contend that Plaintiffs calculations are incorrect because Plaintiffs fail to account for the duration of the loan. Dkt. #32 at 2. According to Defendants, the correct calculation is the loan amount multiplied by the change in interest rate, multiplied by the duration of the loan. *Id.* Using this formula, Defendants calculate the cost at $274,890. *Id.* Defendants contend, however, that these calculations merely provide a prediction of the cost of unwinding the hedge and do not accurately reflect the actual cost. *Id.* Defendants assert that $233,000 is the actual cost that was spent to unwind the hedge and that this amount was charged to Plaintiffs. *Id.* Because the parties genuinely dispute the correct damage calculation, summary judgment is not appropriate.

**IT IS ORDERED:**

1. Plaintiffs' motion to for partial summary judgment on the breach of contract claim (Dkt. #23) is **granted** with respect to liability and **denied** with respect to damages.

2. Defendants' cross-motion for partial summary judgment on the breach of contract claim (Dkt. #28) is **denied**.

3. The Court will set a final pretrial conference by separate order.

DATED this 7th day of November, 2008.

_David G. Campbell_
United States District Judge